STATE OF WEST VIRGINIA

*v.*

E. T. CROWDER

(No 12091)

Submitted September 26, 1961. Decided November 21, 1961.

*Dayton, Campbell & Love, Charles R. McElwee,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, *Charles M. Walker,* Prosecuting Attorney, Kanawha County, for defendant in error.

BERRY, JUDGE:

The defendant, E. T. Crowder, was indicted for false swearing, a misdemeanor, at the April, 1959, term of the Grand Jury of the Intermediate Court of Kanawha County, West Virginia, said false swearing being alleged to have been committed by the defendant while testifying before said Grand Jury.

The defendant was convicted in the Intermediate Court of Kanawha County, West Virginia, of this charge, and on August 19, 1959, was fined $500.00 and sentenced to serve a term of twelve months in the Kanawha County Jail. On appeal to the Circuit Court of Kanawha County, his conviction was affirmed on September 14, 1960. Upon appeal to this Court, a writ of error and supersedeas to the judgment of the Circuit Court of Kanawha County was granted on December 20, 1960.

The alleged false swearing arose out of certain statements made by the defendant before the grand

jury which was investigating the relationship of W. S. Webb, a former member of the Department of Public Safety, and Harold Harbin, an alleged gambler and owner and operator of an establishment in South Charleston known as "The Jeep", which establishment had a reputation among law enforcement officers as being a center for gambling activities.

A raid was made on "The Jeep" by the South Charleston Police on March 13, 1959, under the authority of a search warrant, at which time several checks were found. In addition to the checks, which amounted to approximately $18,000.00, given by Webb to Harbin, a note in the amount of $15,000.00 was found. This note was signed by Webb and the defendant, Crowder, as makers, and made payable to Webb, who was at the time the note was made, and as stated hereinabove, a member of the Department of Public Safety with the rank of sergeant. The defendant Crowder at that time was president of a firm known as the Crowder Motor Company, a corporation, a Chrysler automobile agency located in South Charleston, West Virginia.

S. C. Ballard, a captain in the Department of Public Safety, stationed at Beckley at that time, was called into Kanawha County and made an investigation in connection with the information obtained during the raid on "The Jeep". He afterwards made a report to the prosecuting attorney of Kanawha County which resulted in the grand jury investigation with regard to the relationship between Webb and Harbin. Ballard testified before the grand jury in connection with this matter and recommended that the defendant be subpoened and interrogated by the grand jury in connection with such relationship.

The defendant Crowder was subpoened and appeared before the grand jury during its investigation of Webb and Harbin. He admitted, when questioned by the grand jury, that he had contacted the prosecuting attorney of Kanawha County at the request of Webb, who had asked that Crowder protect him by attempting to

leave the impression with the prosecuting attorney that he was getting the money through Webb, which money appeared to have gone from Harbin to Webb, and that he was repaying the money to Harbin through Webb. The defendant admitted before the grand jury that he attempted to leave a false impression, or failed to tell the truth to the prosecuting attorney at that time, and he stated to the grand jury that he had never obtained any money from Harbin through Webb.

During Crowder's conversation with the prosecuting attorney, he learned that he was involved in the investigation of Webb and Harbin as a result of the note with his name signed thereto having been found in the raid on "The Jeep." The defendant's explanation which he gave to the grand jury with regard to the note was that he signed the note with Webb with the understanding that it was to be used as security for Webb in an attempt to purchase the interest of some heirs in family real estate. The note apparently was to be sent to W. C. Webb, a relative of W. S. Webb, and a bank official in Florida, and was to be applied to the sale price of the real estate, out of which Webb expected to make a profit. The note was dated April 2, 1958, but Crowder stated that he did not sign it until the fall of 1958, and that when he did sign it the name of the payee did not appear on the note. The property in question was supposed to be located in Mingo County, West Virginia.

Crowder stated that he prepared a "declaration of trust" on Webb's house, which was already subject to a prior lien, as security for being a co-maker of the note. He further stated that Webb told him that the deal had fallen through, and that he, Webb, had destroyed the note, at which time Crowder gave the "declaration of trust" to Webb, who in turn destroyed it.

Crowder told the grand jury that Webb had admitted to him that he had told a false story regarding the manner in which the money was obtained from Harbin when he (Webb) stated that Crowder was get-

ting it, and that Webb advised him the note was given to Harbin as collateral for borrowed money.

Webb's testimony before the grand jury was not introduced during the trial of Crowder for false swearing, and is not contained in the record of this case. However, after Crowder was asked questions pertaining to the note signed by him and Webb, the prosecuting attorney and grand jurors questioned him with regard to Webb's statements, or statements relating to Webb, such as whether he lived beyond his income and why Crowder had so much confidence in him, as indicated in the transactions totaling thousands of dollars. One of the grand jurors then asked the defendant if he had to pay for automobiles at the time they were received from the Chrysler factory. This question resulted in a line of questioning dealing with the automobile business by the prosecuting attorney in which it was developed that most dealers do not have sufficient capital with which to pay for automobiles as they are delivered, and said automobiles are obtained under what is known as a "floor plan", which is merely a plan where a finance company or financial institution pays the factory for the automobiles and obtains a lien on them. When the automobiles are sold the dealers are then supposed to pay the finance company or lender of the money. Defendant stated that he used this plan in ninety percent of his purchases.

The following questioning by one of the grand jurors resulted in the indictment for false swearing:

> "Q. Webb implied, or rather he stated, that you sold him a Chrysler car at cost, and stated that he, of course, had to finance it; and he implied the sale of that car hadn't been reported by you, and that was one of the occasions when you needed some money.
>
> "A. I sold him that automobile at cost, the car was financed through a finance company; if there was anything owed on it, it was paid at the same time.
>
> "Q. There is nothing to that, in other words?
>
> "A. I don't think so."

The state contends that these questions and answers constitute false swearing and indicted the defendant for such offense, based on the provisions of Code, 61-5-2. The indictment returned as a true bill by the grand jury reads as follows:

"The Grand Jurors of the State of West Virginia, in and for the body of the County of Kanawha and now attending the said Court, upon their oaths present, that E. T. Crowder on the 14th day of April, 1959, and prior to the date of the finding of this indictment, in the County and State aforesaid before the April, 1959, Term of the Grand Jury of the Intermediate Court of said County of Kanawha, on an issue within the jurisdiction of said Grand Jury of said Court was in due form of law sworn by Felix Caudy, a Deputy Clerk of said Intermediate Court, having competent authority to administer to him the oath to speak the truth, the whole truth and nothing but the truth before the said Grand Jury then and there in session.

"Whereupon and before said Grand Jury then and there in session said E. T. Crowder, being so sworn as a witness, as aforesaid, was asked the following question, to-wit: 'Webb implied, or rather he stated, that you sold him a Chrysler car at cost, and stated that he, of course, had to finance it; and he implied the sale of that car hadn't been reported by you, and that was one of the occasions when you needed some money,' thereupon the said E. T. Crowder testified, deposed and swore wilfully, falsely, corruptly and unlawfully, among other things, in answer to said question, 'I sold him that automobile at cost, the car was financed through a finance company, if there was anything owed on it, it was paid at the same time,' when in truth and in fact said E. T. Crowder had sold to W. S. Webb the said automobile on April 2, 1958, and the amount owed to Universal C.I.T. Credit Corporation, a corporation on said automobile by said E. T. Crowder was not paid by said E. T. Crowder to said finance company until the _____ day of November, 1958, said E. T. Crowder having represented to said finance company from April 2, 1958, until the _____ day of November, 1958, that he, E. T. Crowder, still owned said automobile which he had sold to W. S. Webb on April 2, 1958. Whereupon the said E. T. Crowder did then and there before the

Grand Jury then and there in session, as aforesaid in the County aforesaid unlawfully, wilfully, and corruptly swear falsely, against the peace and dignity of the State.

"Found at the April Term of said Court 1959, upon the information of Joseph Williams, Cross Lanes, Charleston, W. Va. sworn in open Court and sent before the Grand Jury to give evidence to that body."

It is to be noted that the indictment contains one question and one answer in connection with the alleged false swearing, and omits the second question and answer completely, although they were asked at the same time with regard to the same matter, and were all related thereto.

A paper purporting to combine a motion to quash, a demurrer, and a plea in abatement to the indictment was filed on behalf of the defendant on the grounds that the question and the answer indicted upon were vague and indefinite; and defendant specifically relied upon Code, 57-2-3, which follows:

"In a criminal prosecution other than for perjury, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

The contention of the defendant in this connection is that the grand jury proceedings were inadmissible under the provisions of Code, 57-2-3, because he was not charged or indicted for perjury, which is defined in Code, 61-5-1, as testifying falsely under oath in the trial of the witness or any other person for a felony, concerning a material matter or thing. The combined pleading captioned a motion to quash, a demurrer and plea in abatement was overruled by the trial court.

At the trial the defendant objected to remarks made by the prosecuting attorney in his opening statement to the jury in connection with the events that led up to the indictment, and to statements made that while the defendant had sold two cars to Webb, only title to one of them was ever transferred, that being a 1958 Chrysler automobile which was sold in April, 1958, but was not

reported to the finance company until November, 1958, during which time Webb used the car on various occasions; that on one occasion the Universal C.I.T. Corporation, having paid for this automobile under the "floor plan", discovered that it was missing from the floor, and upon investigating found that it had been sold to Webb several months prior, although the finance company had not been paid.

The prosecuting attorney further told the jury that Crowder was in financial difficulty and needed money, and for this reason he sold the 1958 Chrysler automobile and failed to pay the finance company for the car for a period of about eight months; that the finance company cancelled its agreement or contract with Crowder and made him pay for all the automobiles financed under the "floor plan" which were covered by such agreement or contract. He told the jury that Crowder had stated that the 1958 Chrysler had been loaned to Webb, and described defendant's actions as "subterfuge"; that the other automobile, a 1957 Chrysler, which was sold to Webb, had been actually paid for by defendant before or about the time of the sale to Webb, but the conditional sales contract on the 1957 Chrysler was released, and the 1958 Chrysler substituted for it in the conditional sales contract to Webb; that this conditional sales contract was with another finance company, and not the Universal C.I.T. Corporation, and that this 1957 Chrysler was later sold to another man by the name of Glover, who had no connection with the transaction with Webb, except that the 1957 Chrysler was financed again by a Charleston Bank and Crowder was paid for the car by the Bank.

The defendant moved the court to dismiss the jury and continue the case on the ground that the remarks of the prosecuting attorney in his opening statement went beyond any admissible evidence, and attempted to connect the defendant with a gambler and a discredited state policeman, all of which had nothing to do with whether or not Crowder swore falsely in his testimony regarding his paying the Universal C.I.T.

Corporation for an automobile, and that the prosecuting attorney was charging the defendant with separate offenses for dealings relating to misrepresentations to the finance company, as well as "subterfuge" and false information. It was also pointed out by the defendant that the prosecuting attorney had admitted that there were two cars; and that there was no way to tell which one was involved in this case.

The trial court overruled the motion to dismiss the jury and continue the case. The state was allowed to introduce before the jury, over the objection of defendant, forty-three pages of testimony relating to the investigation of the relationship between Webb and Harbin, and untrue statements admittedly made by the defendant to the prosecuting attorney, as well as all background material relative to the $15,000.00 note which he had signed as a co-maker with Webb, which was found in the raid on "The Jeep". The defendant contended that all of the background matter relative to the raid, the relationship between Harbin and Webb, and the misinformation which he had given to the prosecuting attorney were not concerned with the issue involved in this case, as to whether or not he swore falsely to the grand jury regarding the sale of the automobile to Webb and the payment therefor to the finance company, all of which objections were overruled by the trial court.

Evidence introduced during the trial showed that Webb had bought a 1957 Chrysler automobile from the Crowder Motor Company on September 7, 1957, under a conditional sales contract which was recorded in the office of the County Clerk of Kanawha County. This automobile had been first sold before Webb purchased it, to a man named Baker, from whom it was repossessed, at which time the Crowder Motor Company paid all that was due and owing the finance company, after the finance company had questioned the matter because of a misrepresentation made in the down payment, such payment having been made by a note, rather than by cash as represented to the com-

pany. Therefore, at the time this automobile was sold to Webb, the finance company had been paid in full, and when Webb had it financed nothing was owed on it by the Crowder Motor Company. However, on April 30, 1958, a 1958 Chrysler automobile was substituted in Webb's conditional sales contract, with the agreement of his finance company, and he continued to make his monthly payments as provided for in the conditional sales contract executed for the 1957 Chrysler automobile. After the 1958 automobile was sold to Webb and substituted for the 1957 one, the 1957 car was then sold as a new car to a man by the name of Glover, who had it financed through a Charleston bank through which bank the Crowder Motor Company was paid in full for it.

It is true that nothing was owed by the Crowder Motor Company to any finance company for the 1957 Chrysler automobile, because it had been previously paid off in full. However, the 1958 Chrysler automobile had not been paid for when sold to Webb and was not paid for until November, 1958.

The records of the Department of Motor Vehicles of West Virginia do not indicate that Webb ever secured a title for the 1957 Chrysler automobile, but did show the issuance of a title for this car in Glover's name. All three conditional sale contracts with regard to this automobile were recorded in the office of the County Clerk of Kanawha County.

In November, 1957, the Universal C.I.T. Corporation paid for a 1958 Chrysler Saratoga automobile to be held by the Crowder Motor Company on its floor under its so-called "floor plan". Under the standard "floor plan" agreement if the automobile is not sold by the end of each succeeding ninety days the remaining balance owed to the Universal C.I.T. Corporation, the finance company, had to be curtailed ten percent by the dealer. Such curtailments were made by the Crowder Motor Company on the 1958 Chrysler Saratoga in question. However, the final payment of $2500.00 was

not paid by the Crowder Motor Company until November 10, 1958, after the finance company discovered that this car, among others, was missing from the floor of the Crowder Motor Company and demanded payment therefor. This same car had been missing before from the floor of the Crowder Motor Company as disclosed by prior checks made by the finance company, but Crowder had told the finance company representatives that Webb had borrowed the automobile which was subsequently returned to the Crowder Motor Company by Webb.

The Universal C.I.T. Corporation ascertained from the Department of Motor Vehicles of West Virginia in October, 1958, that the title to the 1958 automobile was in Webb's name. When this information was given to Crowder, he admitted that it had been sold to Webb, at which time Crowder gave to the Universal C.I.T. Corporation a cashiers' check of the Crowder Motor Company in the amount of $12,000.00, in settlement of the 1958 Chrysler Saratoga automobile sold to Webb, as well as other cars.

After the state introduced all of its evidence and rested, the defendant moved for a directed verdict on the grounds that the testimony of the defendant before the grand jury in its investigation of Webb and Harbin could not be used against the defendant in this trial for false swearing under provisions of Code, 57-2-3, that the state's evidence showed that all transactions with regard to the automobiles were between the Crowder Motor Company, a corporation, and others, whereas, the indictment charged Crowder personally with such transactions, and, therefore, there was a fatal variance between the indictment and the proof; that there was no proof that Crowder had been referring to the 1958 Chrysler automobile; that the prosecuting attorney had made improper remarks in his opening statement followed by improper evidence on issues and matters immaterial to the charge of false swearing, such as the introduction of the grand jury investigation with regard to the relationship and dealings with Webb and

Harbin, and the business deals between the Crowder Motor Company and the finance company. The trial court overruled this motion.

The defendant testified in his own behalf and stated that he had sold both the 1957 Chrysler New Yorker and the 1958 Chrysler Saratoga automobiles to Webb, that the reason Webb did not keep the 1957 car was because he wanted a later model, that in order to alleviate the necessity of paying again the various charges necessitated in the second conditional sales contract on the 1958 Chrysler, he merely substituted it in the conditional sales contract for the 1957 Chrysler. He further stated that when he testified before the grand jury on the first occasion, out of which this false swearing arose, he did not have any records, but later obtained his records and returned to the grand jury under another subpoena, but was refused permission to appear before said grand jury to further testify in connection with the matters in question. He also testified that the payee's name on the $15,000.00 note which he signed with Webb, which was apparently left blank at the time the note was signed, appeared to have been altered from the name of W. C. Webb to the name of W. S. Webb.

In connection with the statement made by the defendant before the grand jury for which he was indicted and tried, the defendant testified that he was referring to the 1957 automobile when he answered the question propounded by the grand juror, that there was nothing owed on this automobile, that he sincerely believed everything he said at the time he testified before the grand jury to be true. He further testified that he did not intend to mislead the grand jury in any manner.

On cross-examination of the defendant by the state, it was disclosed that Webb kept his automobiles in the Crowder Motor Company and had a key to its garage, and, over the objection of the defendant, he was required to testify that he allowed Webb to use dealer's

license plates on his automobile, a violation of the State Motor Vehicle Laws.

Two instructions were offered by the state and given by the trial court. State's Instruction Number 1 was given over the objection of defendant in the following language:

> "The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, E. T. Crowder, on the 14th day of April, 1959, was duly sworn by Felix Caudy, a Deputy Clerk of the Intermediate Court of Kanawha County, having competent authority to administer to the said E. T. Crowder the oath to speak the truth, the whole truth and nothing but the truth before the Grand Jury of said Intermediate Court on an issue within the jurisdiction of said Grand Jury, and that the said E. T. Crowder thereafter appeared before the said Grand Jury and knowingly, unlawfully and wilfully swore falsely in answer to the following question: 'Webb implied, or rather he stated, that you sold him a Chrysler car at cost, and stated that he, of course, had to finance it; and he implied the sale of that car hadn't been reported by you, and that was one of the occasions when you needed some money,'; by knowingly, wilfully and fasely giving the following answer: 'I sold him that automobile at cost, the car was financed through a finance company, if there was anything owed on it, it was paid at the same time,' then you should find the defendant guilty as charged in the indictment in this case."

State's Instruction Number 2 merely dealt with the burden of proof.

The defendant offered fifteen instructions, all of which were given with the exception of Numbers 5 and 12. Defendant's Instruction Number 5 dealt with reasonable doubt, and was refused. Number 12 was modified and given by the court to the effect that if the jury believed the testimony of the accused was susceptible to two interpretations, the jury should adopt the one most favorable to the defendant.

In his closing argument, the prosecuting attorney attempted to answer certain questions propounded by

the defendant's attorney as to why the defendant was being tried for this alleged crime, and stated that he was behind with his bills, further stating that the case represented ''collusion'' between the defendant on one hand and Webb and Harbin on the other, and in the securing of money from the various finance companies. Objection was interposed on behalf of the defendant as to the statement regarding ''collusion''.

The prosecuting attorney also stated in his final argument that Crowder knew when he testified before the grand jury that he was talking about the 1958 Saratoga automobile, because that was the only car he ever sold to Webb, that the first automobile was not legally sold to Webb. The defendant's objections to the argument of the prosecuting attorney were overruled by the trial court.

The defendant assigns twenty-six grounds of error which will be summarized in the following catagories: (1) the illegal use of evidence in proceedings before the grand jury, in violation of Code, 57-2-3, as the defendant was not being tried for perjury; (2) improper evidence admitted over the objection of defendant with regard to collateral matters dealing with the financial transactions, and other matters not related to the issue; (3) requiring the defendant, over his objection, to answer questions indicating a violation of the Motor Vehicle Laws; (4) the giving of State's Instructions Numbers 1 and 2, the refusal to give Defendant's Instruction Number 5, and the giving of Defendant's Instruction Number 12, as modified; (5) a fatal variance between the indictment and the proof; (6) the remarks of the prosecuting attorney in both opening and closing arguments; and (7), the failure of the state to prove the defendant guilty beyond reasonable doubt, as required in perjury or false swearing cases.

The first question that must be answered in this case is whether Code, 57-2-3, prohibits the use of any statement made by the defendant as a witness before the grand jury in the prosecution for false swearing. Code,

57-2-3, as heretofore set out, reads as follows: "In a criminal prosecution other than for perjury, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

This statute dealing with evidence was taken from the Virginia Code, and was first placed in the West Virginia Code after the War between the States in 1868 in the following language: "In a criminal prosecution other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

This section was amended by the Legislature of this State in 1882, at which time the words, "or an action on a penal statute", were deleted. This statute, which has remained unchanged up to the present time, was incorporated in the official Code of West Virginia in 1931, when it was adopted by the Legislature, and it reads exactly the same as it did after the change made by the Legislature in 1882. The same language is found in Barnes' Code of 1923.

Although perjury was a crime at common law, it was a misdemeanor and defined as wilfully giving under oath, in a judicial proceeding or course of justice, false testimony material to the issue or point of inquiry. 2 Bishop's New Criminal Law, (1892 Ed.), The Specific Offences, Chapter XXXIII, §§1015, 1054.

It was made a statutory offense in West Virginia and placed in the Code of 1868 in Chapter CXLVII, in the following language:

"1. If a person to whom an oath is lawfully administered on any occasion shall, on such occasion, willfully swear falsely touching any material matter or thing, he shall be guilty of perjury; and if the person to whom such oath is administered willfully swear falsely on such occasion, in regard to a matter not material, he shall be guilty of a misdemeanor.

"2. Any person who commits or procures another person to commit perjury, shall, if the perjury be on

a trial for felony, be confined in the penitentiary not less than one nor more than ten years; and if it be on any other occasion, be confined in jail one year, and be fined not exceeding one thousand dollars.

"3. He shall, moreover, on conviction thereof, be adjudged forever incapable of holding any office of honor, trust or profit under this state, or of serving as a juror, or giving evidence as a witness. A person convicted of false swearing under section one shall be fined not exceeding five hundred dollars."

This statute remained unchanged until the West Virginia Code of 1931 was adopted by the Legislature.

The definition of the statutory crime of perjury found in the West Virginia Code of 1868 is practically the same as common law perjury, but such crime was made a felony, and in addition, a misdemeanor penalty was provided if the false swearing pertained to a matter not material. When the West Virginia Code of 1931 was adopted by the Legislature the section dealing with perjury was amended and appears in the following language in separate sentences:

Code, 61-5-1.

"To wilfully testify falsely, under an oath or affirmation lawfully administered, in a trial of the witness or any other person for a felony, concerning a material matter or thing, is perjury and is a felony; to induce or procure another person so to do is subornation of perjury and is a felony."

Code, 61-5-2.

"To wilfully swear falsely, under oath or affirmation lawfully administered, in a trial of the witness or any other person for a felony, concerning a matter or thing not material, and on any occasion other than a trial for a felony, concerning any matter or thing material or not material, or to procure another person to do so, is false swearing and is a misdemeanor."

Code, 61-5-3.

"A person convicted of perjury or subornation of perjury shall be confined in the penitentiary not less than one nor more than ten years, and a person convicted of false swearing shall be fined not more than

one thousand dollars, and, in the discretion of the court, confined in jail not more than one year. And in either case the person convicted shall be adjudged forever incapable of holding any office of honor, trust or profit in this State, or of serving as a juror."

It will be noted that a material change was made in the definition of the crime of perjury in the 1931 Code of West Virginia. Perjury was defined as false swearing in a trial for a felony concerning a material matter or thing; but false swearing in a trial for a felony on a matter not material, and on any other occasion concerning any matter or thing material or not material was made a separate offense. The definition of this statutory separate offense of false swearing was closely related to the common law definition of perjury, except that it did not have to be made on a material matter or thing. At common law there were separate and distinct offenses of perjury and false swearing, the distinction usually being that false swearing did not have to be made on a material matter or thing in a judicial proceeding. Both perjury and false swearing have also been made separate and distinct offenses by statute in many states, and must be charged and prosecuted under such separate statutes. 70 C.J.S., Perjury, §1; 41 Am. Jur., Perjury, §§ 2, 3.

When the 1931 Code was adopted by the legislature, it approved the recommendation of the revisors with regard to the change in the statute in connection with perjury, false swearing, and the penalty therefor, but disapproved the recommendation of the revisors for any change of the statute dealing with evidence pertaining thereto. Code, 57-2-3.

The legislature adopted and approved this Section, Code, 57-2-3, in the same language as it had been contained in the statute since 1882. Before the adoption of the 1931 Code by the legislature, it is clear that Code, 57-2-3, applied to both false swearing on any material matter or thing and swearing falsely to any matter not material, because they are contained in the same section, but swearing falsely to a material matter was a

felony while swearing falsely to a matter not material was a misdemeanor and the penalty was different. When the legislature separated the felony and misdemeanor offenses, putting them in different sections, and did not change the statute dealing with evidence thereto, Code, 57-2-3, it is apparent that it intended Code, 57-2-3, to be applicable to both sections, even though they were separated. The interpretation and meaning of a statute is always aided by a consideration of the former statute. *State v. E. E. Morrison,* 98 W.Va. 289, 127 S.E. 75.

Even though perjury and false swearing are separate and distinct offenses in the technical or legal sense for purposes of prosecution, both at common law and under the statutes of the various states, they are related, and in a popular meaning, sometimes considered synonymous. 70 C.J.S., Perjury, §1; 41 Am. Jur., Perjury, §§ 2, 3; *State v. Ellenstein,* 121 N.J.L. 304, 2 A. (2d) 454; *State v. Kowalczyk,* 3 N.J. 51, 68 A. (2d) 835; *State v. Dowd,* 201 N.C. 714, 161 S.E. 205.

There is no question that perjury and false swearing belong to the same class of crimes and are directed to the same vicious practice. The facts necessary to constitute perjury always include false swearing, but the converse is not true, since the separate statutory offense of false swearing in many instances does not include perjury. *Weiner v. Commonwealth,* (Ky.) 298 S.W. 1075. This is illustrated in the case at bar. The statements made by the defendant before the grand jury under the present statute could not in any event constitute perjury, since perjury, as it is now written in the statute, only includes false swearing on a material matter in a trial of a felony. It has been held in construing statutes regarding perjury and false swearing that false swearing is merely a degree of perjury. *Weiner v. Commonwealth, supra; Strader v. Commonwealth,* (Ky) 42 S.W. 2d 736. Then too, the modern rule of evidence with regard to the burden of proof required for conviction is the same for perjury and false swearing, that is, it must be by one witness

and corroborating circumstances or by two witnesses and to the effect that circumstantial evidence alone is not sufficient for conviction. 41 Am. Jur., Perjury, §§ §64, 65, and 67; *Commonwealth v. Davis,* (Ky.) 18 S.W. 10; *State v. Miller,* 24 W. Va. 802.

The case of *State v. Justice,* 130 W. Va. 662, 44 S. E. 2d 859, which was decided in 1947, after the statute had been changed in 1931, placing perjury and false swearing in separate sections, clearly indicates that Code, 61-5-1, defining perjury, and Code, 61-5-2, defining false swearing, should be read in *pari materia.*

Under the provisions of Code, 57-2-3, the statements or testimony of any person made as a witness before a grand jury, or any other investigation authorized by law, wherein the witness being under oath told the truth and admitted the commission of a crime, cannot be admitted in evidence in a prosecution of the witness for such crime. *State v. Paul Stroud,* 107 W. Va. 591, 149 S. E. 674; *State v. Alva Jones et al.,* 108 W. Va. 264, 150 S. E. 728.

The only exception provided for in this statute allowing such testimony or statements to be used is for perjury. The perjury referred to in the statute when it was inserted in the Code was swearing falsely, whether it was for a felony or a misdemeanor, because the definition of false swearing, whether for a felony or misdemeanor, was contained in the same section, and, although the sections were separated in the Code of 1931, they should still be read together. *State v. Justice, supra.*

We are therefore of the opinion that the exception contained in Code, 57-2-3, relates to false swearing, whether it is in connection with a felony [perjury], or in connection with a misdemeanor [false swearing], and such evidence may be used against the accused in a criminal prosecution for such crimes. We find no error in the ruling of the trial court on this matter.

The next assignment of error deals with defendant's objection to nearly all the evidence introduced in the trial of this case, with the exception of the evidence dealing specifically with the charge of false swearing contained in the indictment, that is, evidence concerning the alleged false answers given before the grand jury relative to the sale of an automobile to Webb at cost, which was financed through a finance company, and that if there was anything owed on it, it was paid at the time the transaction was made.

The defendant was subpoened by the grand jury in connection with its investigation of W. S. Webb and Harold Harbin. The defendant's testimony consisted of forty-three pages, all of which was introduced as State's Exhibit Number 1, over the objection of the defendant, in his trial for false swearing. This testimony consisted of some matters that would have been improper in the trial of a case in a court of justice with a petit jury. Rules of evidence were not adhered to, because the grand jury was merely conducting an investigation. No objections were made, nor could be interposed, as to immateriality or irrelevancy. The fact that the defendant had not told the prosecuting attorney the truth on an occasion when he talked with him was admitted by the defendant in his testimony before the grand jury, all of which was used as evidence in his trial for false swearing.

If the business transactions with regard to the automobile business about which the defendant was questioned during his appearance before the grand jury, and in the trial of the case on cross-examination, had nothing to do with the issue involved as to whether or not he swore falsely before the grand jury, it should not have been admitted in evidence in the false swearing trial.

It has been held under the statutes applicable thereto in the Virginias that in a trial for perjury the whole record of the former trial of the case in which such perjury was alleged to have been committed is required

to be introduced in evidence, but the state may omit parts of the record with the consent of the accused. See W. Va. Code, 62-2-4; Va. Code, 1950, § 19-141; Acts of 1960, Chapter 366, Supp. Va. Code 1950, § 19.1-167; *McClaugherty v. Cooper,* 39 W. Va. 313, 19 S. E. 415; *Mundy v. Commonwealth,* 161 Va. 1049, 171 S. E. 691. However, the general rule applicable to such cases in other states requires that the evidence admitted should be limited to such evidence as tends to establish the false swearing. 70 C.J.S., Perjury, § 52.

The rule requiring all the record to be introduced during the trial for perjury, which has a limited application, refers to a formal trial where the rules of evidence, are adhered to, and no improper evidence would be included or at least the opportunity to object to the admission of same would be afforded. This is not true in the investigation of a grand jury and the parts of the grand jury record which are immaterial, irrelevant, and have nothing to do with the issue should not be admitted in a trial for false swearing where they may prejudice the accused or throw no light on his innocence. *People v. Gleason,* 285 App. Div. 278, 136 N.Y.S. (2d) 220; *Matelski v. State,* 132 Tex. Cr. 344, 104 S. W. (2d) 44; 70 C.J.S., Perjury, §52.

In the case at bar it would only be necessary to introduce in evidence the answers of the defendant which are alleged to have constituted false swearing and proof thereon that they are false. However, all questions and answers relating to the false swearing should be used and included in the indictment, the evidence and the instructions given by the defendant. This was not done in the instant case. The indictment contained only one question and one answer. The proof indicated there were two questions and answers but the instruction to the jury contained only one question and one answer. At the time the alleged false swearing occurred, the grand jury was investigating the dealings of W. S. Webb and Harold Harbin regarding alleged gambling charges constituting a violation of the law. The grand jury only had jurisdiction to

investigate violations of the law, and if the defendant's failure to pay the finance company promptly at the time an automobile was sold to Webb did not constitute a violation of the law, even though it may have constituted chicanery relative to the automobile business, the grand jury would not have any jurisdiction to investigate such matter. 70 C.J.S. Perjury, §22; 41 Am. Jur., §23.

Then too, if the questions asked and the answers given by the defendant regarding his business transactions with the finance company were not relevant to the investigation made by the grand jury, such questions and answers cannot be used in a prosecution for false swearing. This is a question for the court to decide and not the jury. *Partin v. Commonwealth,* (Ky.) 159 S. W. 542; *Mitchell v. Commonwealth,* (Ky.) 36 S. W. 2d 649; 70 C.J.S., Perjury, §15; *Clayton v. United States,* 284 F. 537; *Travis v. U.S.,* C.C.A. Okla. 123 F. 2d 268.

Under the circumstances in this case, we are of the opinion that it was improper to admit the entire testimony of the defendant before the grand jury in his trial for false swearing, allowing prejudicial matters to be considered by the jury as evidence not related to the issue of false swearing for which he was being tried, and giving the state the opportunity to inject improper matters in cross-examination of the defendant.

During the cross-examination of the defendant, after the forty-three pages of his testimony before the grand jury had been introduced in evidence as State's Exhibit Number 1, the state was allowed to cross-examine the defendant with regard to the matters concerning Webb and Harbin, including the $15,000.00 note which he had signed with Webb, the statements that he admitted making to the prosecuting attorney in connection with Webb, which were false, and also allowed to ask the defendant if he had not permitted Webb to use dealers license plates in violation of the State Motor Vehicle Laws.

An attempt was made to object to this question by making a statement that it was a question of law instead of making a formal objection, which was perfunctorily disposed of by the court when it required the defendant to answer such question. This question was not related to whether the defendant was guilty of false swearing, and apprized the jury that the defendant was guilty of violating the law dealing with another matter with which he was not charged in the instant case. If an objection is timely and properly made, the jury should not be allowed to consider such matter. *State v. Foley*, 128 W. Va. 166, 35 S. E. 2d 854; *State v. Bragg*, 140 W. Va. 585, 87 S. E. 2d 689.

We find no error committed by the trial court in refusing to grant Defendant's Instruction Number 5 and allowing the giving of Defendant's Instruction Number 12, as modified.

Instruction Number 5 was merely an instruction on reasonable doubt and was adequately stated in State's Instruction Number 2 given by the court which was a proper instruction on the burden of proof, and was objected to by the defendant only because he was of the opinion that he had a better instruction. Instruction Number 12, offered by the defendant and modified by the court, did not constitute error; even though the instruction as originally offered was changed by the court, the overall content still remained in the construction of the instruction to the effect that the jury should adopt a theory most favorable to the defendant.

State's Instruction Number 1, objected to by the defendant, is quoted verbatim herein. This Instruction only contained one question and one answer with regard to the matter the defendant had testified to, a charge which the state claimed constituted false swearing. Both questions and answers were introduced in evidence and contained in State's Exhibit Number 1. The two questions and answers upon which

this charge of false swearing rests will be quoted again: "Webb implied, or rather he stated, that you sold him a Chrysler car at cost, and stated that he, of course, had to finance it; and he implied the sale of that car hadn't been reported by you, and that was one of the occasions when you needed some money. A. I sold him that automobile at cost, the car was financed through a finance company; if there was anything owed on it, it was paid at the same time. Q. There is nothing to that, in other words? A. I don't think so."

It will be noted that the indictment does not contain all the questions and answers in connection with the matter. It omits the last question and answer. The only part of defendant's answer that could be false under the evidence in this case is "* * * if there was anything owed on it, it was paid at the same time." He admitted that he had sold Webb an automobile at cost and that the automobile was financed through a finance company. The evidence shows that he had sold Webb two automobiles, a 1957 Chrysler New Yorker and a 1958 Chrysler Saratoga, and that he was testifying without his records, and when he was asked the second question, "There is nothing to that, in other words?", his answer, "I don't think so." indicated that he was not positive about the matter.

The jury was told by State's Instruction Number 1 that it could find defendant guilty by considering only the first question and answer which by themselves appeared to be a positive statement as to the truth thereof, but with the second question and answer, which was omitted in the instruction, a different interpretation as to whether the defendant swore falsely may have been placed upon the statements by the jury.

It would appear that all questions and answers relating to the false swearing should have been included in State's Instruction Number 1 in order to allow the jury to consider all evidence specifically relating to

false swearing introduced during the trial of the case, because, in order to convict a person of false swearing, it must be shown by the evidence that the accused intended to testify falsely and that the alleged false swearing was done wilfully, knowingly and absolutely. In other words, there must have been a positive statement made with regard to the false swearing, and, if the statements of the defendant with all evidence relating thereto, merely expressed an opinion of the defendant, he could not be found guilty of false swearing. *Smith v. State,* 66 Ga. 669, 19 S. E. 2d 168; *Charles A. Rothfuss v. Commonwealth of Virginia,* 198 Va. 461, 94 S. E. 2d 532.

We therefore hold that it was reversible error to give Instruction Number 1 over the objection of the defendant without such Instruction containing all evidence relating to the charge of false swearing.

Another error assigned by the defendant is the contention that there was a fatal variance between the indictment and the proof. The indictment alleged that the automobile was sold by E. T. Crowder, that said E. T. Crowder still owned said automobile and did not pay the finance company for it promptly. The proof showed that the automobile was owned, sold and paid for by the Crowder Motor Company, a corporation, although, apparently, the defendant carried on the transaction for the corporation.

The law is quite technical with regard to a variance between pleadings and proof in criminal cases. It has been held that it is a fatal variance when an indictment charges the commission of an offense by an accused acting in a specific capacity which is an ingredient of the offense, and the proof shows that he was acting in an entirely different capacity. 27 Am. Jur., Indictments and Informations, §183; *Miller v. State,* 88 Tex. Crim. Rep. 69, 225 S. W. 379, 12 A.L.R. 597.

If an indictment alleges that an offense was done in a particular way, the proof must support such charge or there will be a fatal variance. However, if such averment can be omitted without affecting the charge in the indictment against the accused, such allegation may be considered and rejected as surplusage if not material. *State v. McGraw,* 140 W. Va. 547, 85 S. E. 2d 849.

The substance of the charge of false swearing in this case is that Crowder did not tell the truth when he stated that if there was anything due on the automobile sold to Webb, it was paid for. The manner in which it was paid for would be immaterial if he was responsible for paying, and he knew, or should have known that it was paid or not paid. The variance between the indictment and the proof is considered material only where the variance misleads the defendant in making his defense and exposes him to the danger of being put in jeopardy again for the same offense. *State v. Nelson,* 121 W. Va. 310, 3 S. E. 2d 530; 27 Am. Jur., Indictments and Presentments, §57.

It should be pointed out again that the indictment did not contain all the statements made by the defendant in connection with the alleged false swearing. The last statement or answer made by him in connection therewith, which was omitted from the indictment, although contained in the proof, indicates that the statement was not absolute or positive. See *Allen v. United States,* (C.C.A. 4th) 194 F. 664, 39 L.R.A. (N.S.) 385; *Radomsky v. United States,* 180 F. (2d) 781. However, this question is not raised here and will not be considered or discussed further.

We therefore hold that even though the proof indicated that the payments were made by the corporation instead of E. T. Crowder personally, this would not constitute a fatal variance between the indictment and the proof in this case. *State v. McGraw, supra; State v. Nelson, supra.*

The errors complained of by the defendant relating to the remarks of the prosecuting attorney in the opening and closing arguments in his use of the words "subterfuge" and "collusion", in his remarks regarding defendant's actions will be considered in the discussion of the assignment of error relating to the failure of the state to prove the defendant guilty beyond a reasonable doubt, as required in such cases.

The defendant testified that in his answers to questions propounded him during the grand jury investigation he was talking about the 1957 Chrysler automobile which was sold to Webb. He sold the 1957 automobile to Webb, and the finance company was paid for it before it was sold. The state claimed he was talking about a 1958 automobile, and its entire case is based on this assumption.

The indictment alleges facts to indicate the automobile was the 1958 Chrysler, although it was not specifically described as such. There is no direct proof in the entire record to show the defendant was talking about the 1958 automobile when he testified before the grand jury. All questions and answers before the grand jury, upon which this false swearing is based, refer to a Chrysler car sold at cost, financed through a finance company and the payment to the finance company of anything due on it. Although there is proof that a 1958 Chrysler automobile was sold to Webb, there is a complete absence of proof that the defendant was talking about *that automobile* when he answered the questions before the grand jury. Before defendant could be held responsible for distortion of facts before the grand jury, it would have to be shown that the topic he is accused of distorting was examined upon in such a way that his intention to distort was unmistakable. *People v. Casanova,* (Cal.) 202 P. 45.

In connection with the defendant's testimony before the grand jury with regard to the sale of a Chrysler automobile, the evidence shows that he testified with-

out his records relating thereto; that after his testimony was given, he was resubpoened and returned to the grand jury with his records, at which time he was not permitted to testify. Had he been permitted to testify on this occasion, such testimony may have resulted in establishing the fact that he did sell the 1958 automobile to Webb, and the finance company was not paid immediately. Had this been done he could not have been indicted for false swearing regarding the 1958 automobile.

There is no question that the defendant was involved in transactions with Webb and perhaps Harbin. This is indicated by the grand jury investigation before which he was called to testify, and by his testimony before the grand jury which was used as State's Exhibit Number 1 in this case. Nor is there any question but that he was engaged in some subterfuge in connection with his business dealings with the Universal C.I.T. Corporation and there may have been some collusion between the defendant on one hand and Webb and Harbin on the other with regard to the $15,000.00 note which was introduced in evidence, or other deals. However, the defendant was not being tried in the instant case for any such subterfuge, double-dealing or chicanery in connection with his dealings with the finance company, nor for any collusion, secret agreements or secret purposes, in his dealings with Webb and Harbin. Much of the evidence introduced concerning this case related thereto.

When the prosecuting attorney in his opening statement used the word "subterfuge" in describing the actions of the defendant regarding the crime of false swearing, **and in his closing statement** when he used the word "collusion" in describing the activities of the defendant regarding the charge of false swearing, it was improper, even though the remarks of defendant's counsel may have given him cause to use such words, because they referred to matters which the defendant may have been guilty of, but for which he was not being tried, all of which were objected to in

the opening statement, throughout the trial, and in the closing argument by the attorney for the defendant. The burden of proving a case in which an accused is charged with false swearing is somewhat different from ordinary burden of proof in the usual criminal cases. The state must not only prove the defendant guilty beyond a reasonable doubt, the same as in any other criminal case, but circumstantial evidence alone is not sufficient to sustain such a conviction. There must be positive and direct proof before an accused can be convicted of such offense. 41 Am. Jur., Perjury, §65; *Allen v. United States,* (C.C.A. 4th), 194 F. 664, 39 L.R.A. (N.S.) 385; *Radomsky v. United States,* 180 F. (2d) 781.

The proof with regard to the sale of the Chrysler automobile used in the transcript of testimony of defendant before the grand jury as evidence in the trial of this case did not establish positively that the defendant was referring specifically to the 1958 automobile charged in the indictment and no witnesses testified directly to this fact. The common law rule requiring two witnesses in a perjury case to the falsity of the statement has been relaxed in most states to allow proof by one witness and corroborating circumstances. The same principle applies to false swearing. *Commonwealth v. Davis,* (Ky.) 18 S. W. 10. It is necessary, in order to convict an accused of false swearing, that such false swearing be established by the testimony of at least one witness and that other facts or circumstances corroborate such witness if two witnesses do not establish it. 41 Am. Jur., Perjury, §67; 70 C.J.S., Perjury, §§ 68, 69; *Partin v. Commonwealth,* (Ky.) 159 S. W. 542; *Commonwealth v. Davis,* (Ky.) 18 S. W. 10; *State v. Miller,* 24 W. Va. 802.

From the facts and circumstances indicated by the record of the trial of this case, we are of the opinion that the state failed to prove that the defendant was guilty of the alleged false swearing beyond a reasonable doubt, as required in such cases. *Radomsky v. United States,* 180 F. (2d) 781.

It may be true that the defendant is guilty of some wrongdoing and this Court does not approve of his activities and dealings in connection with the automobile business, as well as his relationship with a discredited former state policeman and alleged gambler, but these facts or circumstances do not prove that he was guilty of false swearing, the offense for which he was charged and tried in the case at bar.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is reversed, the judgment of the Intermediate Court of Kanawha County is reversed, the verdict of the jury is set aside, and a new trial is awarded to the defendant.

*Judgments reversed;
verdict set aside;
new trial awarded to
defendant.*