418 S.E.2d 361

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Elmer SCARBERRY, Defendant Below, Appellant.**

**No. 20525.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided May 28, 1992.

Joanna I. Tabit, Deputy Atty. Gen., Charleston, for appellee.

Abishi Cunningham, Welch, for appellant.

PER CURIAM:

This is an appeal by Elmer Scarberry from an order of the Circuit Court of McDowell County sentencing him to from one to ten years in the State penitentiary for daytime burglary and to twelve months in the McDowell County Jail for petit larceny. The defendant was convicted of daytime burglary of a dwelling house and stealing an electrical breaker box, the property of Johnny Williams. On appeal, the defendant claims that the structure which he broke into was not technically a dwelling house and that, as a consequence, he could not properly have been convicted of daytime burglary. He also claims that the evidence failed to establish that the breaker box was the property of Johnny Williams at the time he took it. He argues that, under the circumstances, the trial court erred in failing to direct a verdict of not guilty at the conclusion of the State's evidence and the court erred in failing to set aside the jury's verdict and in failing to enter a judgment of acquittal. After reviewing the record and the questions presented, this Court agrees with the defendant's assertions. Accordingly, the judgment of the Circuit Court of McDowell County is reversed.

The evidence in this case shows that in 1986 Johnny Williams purchased a parcel of real estate located at Rolfe, McDowell County, West Virginia. At the time there was a mobile home owned and occupied by the Crockett family located on the real estate.

Some time after Mr. Williams purchased the real estate, the Crocketts moved out of the mobile home, since they could not afford to pay for it and since they wished for the lender to repossess it. According to the evidence, after moving out of the mobile home they had no intention of returning to it, and it stood vacant for more than one year.

Further evidence showed that on March 15, 1989, the defendant, Elmer Scarberry, entered the mobile home and removed a breaker box from it. On the following day he was arrested for daytime burglary and petit larceny.

During the trial of the case, evidence was introduced showing that at the time of the breaking into the mobile home, Frank and Mary Crockett owned it. Johnny Williams, according to the evidence, was in the process of buying the mobile home, but he did not sign a written agreement to purchase it until May 2, 1989, approximately a month and a half after the defendant entered it.

In the present proceeding, the defendant correctly claims that under *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982), for there to be a daytime burglary under *W.Va.Code*, 61-3-11, the breaking must have been into the dwelling house of another. The defendant further argues that the mobile home which he entered was not a dwelling house at the time he entered it, since Mary and Frank Crockett had moved out of it, since it was unoccupied, and since the Crocketts had, in effect, abandoned it without the intent of returning. Given these circumstances, the defendant claims that the evidence failed to establish an essential element of the crime of daytime burglary and that at the close of the State's case the trial court should have directed a verdict for him or at the conclusion of the trial the trial court should have set aside the jury's verdict and entered a judgment of acquittal on the burglary count.

The defendant was convicted of burglarizing the dwelling house of another in the daytime in violation of *W.Va.Code*, 61-3-11. That Code section, in relevant part, provides that:

(b) If any person shall, in the daytime, enter without breaking a dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a felony or any larceny therein,

he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years.

That statutory language also provides:

(c) The term "dwelling house," as used in subsections (a) and (b) of this section, shall include, but not be limited to, a mobile home, house trailer, modular home or self-propelled motor home, used as a dwelling regularly or only from time to time, or any other nonmotive vehicle primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time.

■ Rather clearly under the statutory language before an individual may be convicted of burglary he must actually enter a structure which is a "dwelling house." In a number of cases this Court has indicated that a building suitable for residential purposes, having been so designated and used, and being equipped with household furnishings, constitutes a dwelling house. *See, e.g., State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981); *State v. Bair*, 112 W.Va. 655, 166 S.E. 369 (1932); *State v. Williams*, 40 W.Va. 268, 21 S.E. 721 (1895). In each of these cases, the Court addressed the question of whether a dwelling house, when temporarily unoccupied or temporarily vacated by its previous occupants, ceases to be a dwelling house. The general rule enunciated in each of the cases is that the structure remains a dwelling house, although temporarily unoccupied, if the absence of the householder is with the intent to return. *See especially State v. Bair, supra.* It is further recognized in the *Bair* case that entry of such a temporarily unoccupied building with the intent to commit a felony or any larceny therein constitutes a burglary.

Although the Court is unaware of any case in West Virginia specifically addressing the question of precisely when a structure ceases to be a dwelling house, a number of other jurisdictions have addressed that question and have, rather uniformly, concluded that a dwelling is no longer a dwelling house for purposes of a burglary statute when its occupants leave it without any intention of returning. The widely-recognized rule is set forth by the Florida court, quoting 6 Cyc. 185, and referring to several earlier cases, in *Tukes v. State*, 346 So.2d 1056, 1057 (Fla.Dist.Ct.App.1977), as follows:

If it [a structure which has been established as a dwelling house] is so occupied the temporary absence of the occupant will not prevent it from being the subject of burglary as a dwelling house; but a house, although furnished as a dwelling house, loses its character as such for the purpose of burglary, if the occupant leaves it without the intention to return.

A number of other courts have reached essentially the same conclusion. *See Gillum v. State*, 468 So.2d 856 (Miss.1985); *People v. Sheirod*, 124 A.D.2d 14, 510 N.Y.S.2d 945 (1987); *State v. Ferebee*, 273 S.C. 403, 257 S.E.2d 154 (1979); *State v. Berry*, 598 S.W.2d 828 (Tenn.Ct.Crim.App. 1980); *Rash v. Commonwealth*, 9 Va.App. 22, 383 S.E.2d 749 (1989).

■ After examining these cases, this Court finds the reasoning of the *Tukes* case to be persuasive and, therefore, concludes that under the West Virginia statute a structure is no longer a "dwelling house" for the purposes of West Virginia's burglary statute, *W.Va.Code*, 61–3–11, when its occupants leave it without any intention of returning.

Having reached such a conclusion, this Court, after examining the record in the present case, concludes that the evidence showed that the Crocketts, who had occupied the mobile home in question, moved out of it and had no intention of returning to it. It had, in fact, ceased to be a dwelling house.

■ The general rule in this State is that:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To war-

rant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syllabus point 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

In the present case, even after construing the evidence in the light most favorable to the State, the Court believes that it fails to show that the defendant entered a dwelling house as contemplated by the law and by West Virginia's burglary statute. The Court further believes that the evidence was consequently manifestly inadequate to support the defendant's burglary conviction and that the defendant's conviction on that ground must be reversed and set aside.

■ The defendant also challenges the petit larceny conviction. The defendant, as previously indicated, was charged with stealing a breaker box which was the property of Johnny Williams.[1] On appeal he claims that the evidence showed that the breaker box which was carried away was the property of Frank and Mary Crockett at the time it was carried away and that Johnny Williams had no property interest in it. Under the circumstances, he claims that there was a fatal variance in the charge and the proof in the case and that the trial court erred in failing to direct a verdict in his favor on the petit larceny count.

■ The generally recognized rule relating to the conformity of proof in a larceny case is that the proof must shown ownership of the property stolen in a person of the same name stated in the indictment, although an immaterial variance may be disregarded in the absence of prejudice to the accused. In expounding upon this point, 52A C.J.S. *Larceny* § 99c, pp. 577–78 (1968) states:

Correspondence between the indictment and proof as to the name of the owner ordinarily must exist in the case of the Christian name as well as in the surname; but, since a middle name or initial is not recognized by the law as an essential part of a person's name, a variance between the allegation and the proof with respect to it is immaterial, and the same rule applies to the suffixes "Sr." and "Jr." If an owner has acquired, by usage, a name different from his true name, the ownership may be laid in him by either name and it will not be deemed a variance, if, his true name having been stated in the indictment, the proof shows him to have acquired another name by usage, or vice versa. If the name under which the ownership is laid has the same sound as that of the person proved to be the owner, although spelled differently, there is no variance. (Notes omitted.)

This proposition has been generally recognized in West Virginia in *State v. Reece*, 27 W.Va. 375 (1886). *See also, State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955).

■ In syllabus point 8 of *State v. Crowder*, 146 W.Va. 810, 123 S.E.2d 42 (1961), the Court stated:

If an indictment alleges that an offense was done in a particular way, the proof must support such charge or there will be a fatal variance. However, if such averment can be omitted without affecting the charge in the indictment against the accused, such allegation may be considered and rejected as surplusage if not material.

In *State v. Crowder*, the Court went on to explain:

The variance between the indictment and the proof is considered material only where the variance misleads the defendant in making his defense and exposes

1. The indictment stated:
   And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that the said ELMER SCARBERRY on the __ day of March, 1989, in the said County of McDowell, One (1) electrical breaker box of a value in excess of $200.00, of the money, goods, effects and property of Johnnie Williams, did unlawfully and feloniously steal, take and carry away, in violation of West Virginia Code 61–3–13, as amended, against the peace and dignity of the State.

him to the danger of being put in jeopardy again for the same offense.

*State v. Crowder*, 146 W.Va. at 836, 123 S.E.2d at 57.

In the present case the indictment alleged that the property stolen was the property of Johnny Williams. The proof adduced showed that the property was that the Crocketts. The Crocketts were wholly distinct from Johnny Williams. The variance between the proof and the charge was not one of simple misnomer as in *State v. Reece, supra*.[2] The Crocketts and Johnny Williams were wholly distinct people, as was the situation in *State v. McGraw, supra*.

In this Court's view, the variance in the present case was of such a character as would have misled the defendant in making his defense. It was so substantial that, in this Court's view, in line with the reasoning in *State v. McGraw, supra*, it must be considered fatal.

For the reasons stated, the Court concludes that the defendant's convictions must be reversed and set aside.

Reversed.

---

**2.** It was not one involving a middle initial or a "Jr." or a "Sr." or of an additional name acquired by an owner; it was a variance of Christian name and overall identity.