STATE OF WEST VIRGINIA *v.* MASON BAIR

(No. 7269)

*and*

STATE OF WEST VIRGINIA *v.* ERNEST WORKMAN

(No. 7343)

Submitted October 18, 1932. Decided October 25, 1932.

*Fulton & Riddle,* for plaintiffs in error.

*H. B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

MAXWELL, JUDGE:

The defendants, jointly indicted, separately tried, were each convicted and sentenced to two years confinement in the state penitentiary. Separate writs of error were awarded.

The indictment charges the defendants and two others with having entered in the nighttime, without breaking, a dwelling house of C. A. Shott and Dewey White in Boone County with intent to steal the goods and chattels of said owners.

Whether the building alleged to have been burglarized was a dwelling house within the meaning of the statute on burglary presents our first query. The building is located in a rural community. One of the co-owners, Shott, testified that it was used by the owners and their families as a place of residence in vacation time and at week-ends, particularly in warm weather; that the building was completely furnished for occupancy, such furnishing including beds and bedding, chairs, tables, radio, victrola, heating stove, dishes, cook stove and kitchen utensils. Food stuffs also were usually kept in supply. The size of the structure does not appear from the record.

Many cases discuss whether the several buildings therein described were, under the circumstances, dwelling houses within the meaning of the law of burglary. A building need not be regularly occupied as a place of habitation to render it a dwelling. Of course if the owner or occupier has quit the premises without intent to return, the building thereby ceases to be a dwelling, but it is otherwise if the absence be *animo*

*revertendi. State* v. *Meerchouse,* (Mo.) 86 Am. Dec. 109. "Nor will a dwelling house cease to be such because of the temporary absence of its occupants, even though another dwelling place may be established for the time being." *Schwabacher* v. *People,* 165 Ill. 618. The same case quotes approvingly an encyclopedic note: "A house is no less a dwelling house because at certain periods the occupier quits it, or quits it for a temporary purpose. * * * So if A have two mansion houses, and is sometimes with his family in one and sometimes in the other, the breach of one of them in the absence of his family is burglary." The Kentucky Court of Appeals has aptly held that a building "Having been designated for and used as a dwelling house, it remains a dwelling house, though temporarily unoccupied, until converted to some other use." *Thomas* v. *Com.,* (Ky.) 150 S. W. 376. That a building need not be occupied at the time it is feloniously entered in order that the crime be burglary seems clear. *State* v. *Williams,* 40 W. Va. 268, 21 S. E. 721. So we conclude that the defendant's insistence that the building designated in the indictment as a dwelling house was not in fact such, at the time it was burglarized, is not well taken.

On Sunday morning the 1st of February, 1931, discovery was made that the building had been entered feloniously, presumably the preceding night. Blankets and other articles had been taken away. A radio and other things had been broken and mutilated and left in the building. Food stuffs were scattered about. Vandalism had wrought chaos. No person was occupying the building at the time it was burglarized.

E. E. Green, a deputy sheriff of Boone County, lived in the neighborhood. C. C. Linville also lived in the vicinity. They conducted an investigation the morning the crime was discovered. They observed where entry had been made from the ground through a window which had been broken presumably by the guilty party or parties. There was soil on the side of the house beneath the window, and on the window sill. The deputy and Linville both testify that tracks of three individuals were clearly defined in the soil by the side of the house and particularly beneath the window. They say they made accurate measurments, and they describe the tracks as

of three sizes and characterize them as distinguished not only by sizes but by heel marks and otherwise. One set of the tracks was signalized by the absence of a heel on one shoe and was later identified as those of defendant Workman. Another set, characterized by size and heel marks, subsequently was identified as tracks of defendant Bair. Sunday evening the deputy, Green, saw defendant Bair passing along the highway in front of his home. The deputy examined Bair's tracks and testified that they were exactly the same as one set of tracks which he and Linville had observed at the scene of the burglary. Linville testifies that about three days later both defendants together passed his home and that he examined their tracks, and that the tracks were the same as two sets of the tracks which he and Green had examined the preceding Sunday morning at the scene of the burglary.

Deputy Green also testifies that on Saturday evening, January 31st, he observed the two defendants and Hayden Bair, a brother of Mason, pass by his home going in the direction of the building that was burglarized. Vada Miller testifies that Sunday evening the two defendants and Hayden Bair called at her home (in the neighborhood) for a short visit, and that while there Mason said to her, ''You ought to have been with us last night,'' and that upon her inquiry as to where they had been, he said, ''We have been in the log cabin, haven't we, Ernest?'' (referring to defendant Workman), and that Ernest replied, ''Yes.''

The defendants admit that they passed by the deputy's home Saturday evening going in the direction of the property which was burglarized, but say that they were going to church at Banty Town. They not only deny the conversation testified to by Vada Miller, but deny that they were at her home subsequent to the time the burglary was supposed to have taken place. No witness was called by the defendants to testify that they were in attendance at church services Saturday evening.

Defendants challenge the testimony of Vada Miller as preposterous and therefore wholly incredible, and say that it is absurd to think that they or any other rational person would thus voluntarily have proclaimed guilt. Whether the testimony of this witness was worthy of belief was purely a

jury matter. But even if her testimony be wholly discredited, there remains, in our judgment, sufficient circumstantial evidence to sustain the verdict. Authority need not be cited that circumstantial evidence alone may sustain a conviction.

Complaint is made of the giving of three instructions at the instance of the state. Instruction No. 1: "The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, alone, or with some other person, prior to the finding of the indictment in this case, entered the house mentioned in the indictment in this case, in the nighttime, with intent to take, steal and carry away any of the property in said house, then you shall find the defendant guilty as charged in the indictment in this case." This instruction is said to be faulty because it refers to an entry without specifying whether with or without breaking; because it refers to a house without designating it as a dwelling house; and because it refers to the intent to steal and carry away property "in said house", without designating it as property of Shott and White. We are of opinion that these criticisms are insubstantial. Whether the entry was made with or without breaking is not important if it was done in the nighttime, because under the statute, Code 1931, 61-3-11, the offense and punishment are the same. The indictment designates the house as a dwelling house; so when reference is made in the instruction to "the house mentioned in the indictment," a dwelling house is necessarily designated. And the reference to "the property in said house" is sufficient under the undisputed testimony that the property in the house belonged to Shott and White as alleged in the indictment.

The underlying purpose of state's instruction No. 2 was to tell the jury that if they believe from the evidence beyond a reasonable doubt that the defendant was present, aiding and abetting in the burglarizing of said house, he should be found guilty. This is predicated on hypotheses recited in the first part of the instruction in about the same language as that which appears in instruction No. 1. For the reasons presented in our discussion of No. 1, we are of opinion that there was no error in No. 2. No. 3 is a circumstantial evidence instruction in approved form.

Four instructions were given in each case at the instance of defendant. These instructions were the same in each case and are all that were requested in Workman's case. In Bair's case his instruction No. 5 was for a directed verdict of not guilty. This was properly refused, because an issue of fact for jury determination was presented on the evidence. His instruction No. 6 would have directed the jury not to take into consideration a letter ''extracts from which were read in this case.'' This was a letter supposed to have been written by Bair while confined in the Boone County jail. He was cross-examined at length about it but at the conclusion of the cross-examination, upon objection of counsel for the defendant, the court declined to allow the letter to go to the jury. This announcement by the court was made in the presence of the jury. Thereupon counsel for the defendant stated, ''We also want the jury to be instructed not to consider any testimony about that letter.'' Whereupon the judge observed, ''Well, all right, gentlemen.'' It is urged that the court should have been more specific and definite in his action upon the last request of counsel. A more specific and direct ruling would have been much better, but, in the light of the announcement which had just been made from the bench that the letter would not be admitted in evidence, we think the jury could not well have understood otherwise than that the court gave assent to the defendant's request that the jury should not consider anything that had been said about the letter.

Other assignments of error center around the ones which we have specifically discussed.

Perceiving no prejudicial error in either case, we affirm both judgments.

*Affirmed.*