STATE OF WEST VIRGINIA

*v.*

GARRETT ELWOOD LOUK

( No. 14761)

Decided December 18, 1981.

Brooks E. Smith, for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Thomas N. Trent*, Assistant Attorney General, for defendant in error.

MILLER, JUSTICE :

The defendant, Garrett Elwood Louk, was convicted of burglary in the Circuit Court of Preston County and was sentenced to from one to fifteen years in the State penitentiary. Two major points are claimed for reversal. First, defendant asserts that petit larceny was a lesser included offense under the burglary indictment and the trial court erred in refusing to instruct the jury that a petit larceny verdict was an option which it could consider. The second ground is that the evidence was insufficient to support a conviction.

I.

The question whether the offense of larceny is a lesser included offense of the crime of burglary appears to be a matter of first impression in our jurisdiction. We recently considered what constitutes a lesser included offense in *State v. Daggett*, ____ W. Va. ____, 280 S.E.2d 545, 557 (1981), and made this statement:

> " 'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense.' *Cook v. State*, 258 Ind. 667, 671-72, 284 N.E.2d 81, 84 (1972). *See also, State v. Branch*, 108 Ariz. 351, 498 P.2d 218 (1972); *McCullers v. State*, 206 So.2d 30 (Fla. App. 1968). We summarized this test in syllabus point 7 of *State v. Bailey*, W. Va., 220 S.E.2d 432, (1975) where we said: 'An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' "

The crime of burglary is defined in W. Va. Code, 61-3-11(a), as:

> "Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break

and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary."

The statutory elements of burglary have expanded to some degree the common law crime of burglary,[1] but this expansion is not material to the decision of this case since the critical question in this case is whether the statutory phrase "with intent to commit a felony or any larceny therein" carries with it the crime of larceny. Our statute is consistent with the conclusion of most courts that the burglary is complete once there has been an unauthorized entry and a showing that there was an intent to commit a felony. *E.g., State v. Van Brocklin*, 598 P.2d 938 (Alaska 1979); *Patterson v. Commonwealth*, 251 Ky. 395, 65 S.W.2d 75 (1933); *State v. Rand*, 430 A.2d 808 (Me. 1981); *State v. Revelle*, 301 N.C. 153, 270 S.E.2d 476 (1980); 13 Am.Jur.2d *Burglary* §1 (1964).

The often expressed reason advanced by authorities against requiring that there be a completed felony in addition to the breaking and entering is that historically burglary was a crime against the habitation. This point was briefly stated in *State v. Neff*, 122 W. Va. 549, 550, 11 S.E.2d 171, 171 (1940): "At common law burglary was 'an offense against the habitation not against property.' 9 C.J. 1009; 12 C.J.S., *Burglary* §.1" *See also*, 3A Michie's Jurisprudence, *Burglary and Housebreaking* §4 (1976); 13 Am.Jur.2d *Burglary* §25 A.L.R. 428 (1933).

On the other hand, to support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently

---

[1] The common law definition of burglary consisted of (1) breaking and (2) entering of (3) a dwelling house (4) of another (5) in the nighttime (6) with intent to commit a felony therein. *State v. Caddle*, 35 W. Va. 73, 12 S.E. 1098 (1891); LaFave & Scott, *Criminal Law* 708 (1972 ed.); 3A Michie's Jurisprudence, *Burglary and Housebreaking* §2 (1976).

deprive him of the ownership thereof.[2] *State v. Pietranton,* 137 W. Va. 477, 72 S.E.2d 617 (1952); *State v. Voiers,* 134 W. Va. 690, 61 S.E.2d 521 (1950); 12A Michie's Jurisprudence, *Larceny* §2 (1978); LaFave & Scott, *Criminal Law* 622 (1972 ed.). The critical point is that all of the elements of larceny are not required to be shown in order to obtain a conviction of burlgary. The only element of larceny necessary to be shown for a burglary conviction is the intent to commit the burglary. Thus, under our lesser included offense test enunciated in *Daggett, supra,* larceny does not become a lesser included offense of burglary.

Other courts which have addressed this problem have rather uniformly concluded that larceny is not a lesser included offense of burglary. *E.g., State v. Madrid,* 113 Ariz. 290, 552 P.2d 451 (1976); *People v. Tatem,* 62 C.A.3d 655, 133 Cal. Rptr. 265 (1976); *People v. Azevedo,* 218 C.A.2d 483, 32 Cal. Rptr. 748 (1963); *State v. Rand, supra; Young v. State,* 220 Md. 95, 151 A.2d 140 (1959), *cert. denied,* 363 U.S. 853, 80 S.Ct. 1634, 4 L.Ed.2d 1735 (1960); *State v. Revelle, supra; State v. Harris,* 65 Ohio App.2d 182, 19 Ohio St.3d 1331, 417 N.E.2d 573 (1979); *Gransberry v. State* 64 Okla. Crim. 408, 81 P.2d 874 (1938); *State v. Parr,* 298 N.W.2d 80 (S.D. 1980).[3]

---

[2] We still retain the common law definition of larceny even though our statute, W. Va. Code, 61-3-13, dividing the crime into grand and petit larceny does not purport to define the elements of larceny. We also have certain statutes dealing with specialized forms of larceny. *E.g.,* W. Va. Code, 61-3-14 (larceny of bank notes, checks, writings of value and book accounts); W. Va. Code, 61-3-16 (larceny of things savoring of the realty); W. Va. *Code* 61-3-17 (larceny of skiff, boat, timber and appliances).

[3] Since the lesser included offense test is often used by courts in determining whethere a trial is barred under double jeopardy principles, a number of courts have concluded that a conviction for burglary does not preclude a conviction for larceny arising at the time of the burglary. *E.g., Mead v. State,* 489 P.2d 738 (Alaska 1971); *State v. Arnold,* 115 Ariz. 421, 565 P.2d 1282 (1977); *King v. State,* 262 Ark. 342, 557 S.W.2d 386 (1977); *Tribbott v. Commonwealth,* 561 S.W.2d 662 (Ky. 1978); *State v. Cline,* 477 S.W.2d 91 (Mo. 1972); *State v. Carter,* 205 Neb. 407, 288 N.W.2d 35 (1980); *State v. Revelle,* 301 N.C. 153, 270 S.E.2d 476 (1980); *Asimakis v. State,* 87 S.D. 464, 210 N.W.2d 161 (1973); *State v. Alford,* 25 Wash. App. 661, 611 P.2d 1268 (1980). This issue is not before us and consequently we do not address it.

Typical of the reasoning is that contined in *State v. Rand, supra,* at 814:

> "The crime of burglary is complete when the defendant makes an unauthorized entry into a structure if at the time of his entry into the building he entertains the actual intent to commit a specific crime therein, which may be theft by unauthorized taking. *State v. Field,* Me., 379 A.2d 393, 395 (1977). The burglar, after making his unauthorized entry with the intent to commit the crime of theft by taking, may change his mind and come out empty-handed; he still could be prosecuted for burglary. But, if he did commit the crime of theft by taking which he intended to commit when entering, he would be subject to prosecution for both burglary and theft, since he would have committed two crimes and could be convicted of both offenses."

Consequently, we hold that the court did not err in refusing to give the defendant's instruction on petit larceny.

## II.

The defendant further contends that the State's evidence fails as a matter of law to prove that he committed the crime of burglary. The evidence reveals that on July 23, 1978, at approximately 9:00 p.m., the defendant accompanied by five others traveled in his brother's automobile toward a dam located near the Raymond Vargo farm. As the car approached the Vargo farm, the defendant discussed with Ronald Louk and Samuel Mc-Crobie the fact that Vargo was not living in the house. When the car reached the Vargo property, the defendant pulled the car up to the fence and the four men—the defendant, Ronald Louk, Donald Robinson and Mc-Crobie—exited and went down the hill toward the Vargo farmhouse. The two women, Sandy Louk and Nancy Ann Taylor, were instructed by the defendant to drive the car off and come back in about one-half hour.

When the women returned, they found Robinson, with his head cut from a fall he suffered while climbing over a

fence, waiting for them. Robinson pursuant to Sandy Louk's request summoned Ronald Louk who appeared carrying two headless chickens and some onions. Ronald Louk ordered the women to take Robinson home and then return. At that time, the two women also took the chicken and onions to Rachel Louk's house. Rachel Louk is the mother of the defendant and Ronald Louk.

The two women then returned to the vicinity of the Vargo farm and found the defendant, Ronald Louk and McCrobie standing beside the road by a cornfield. The defendant asked for the car keys and the three men put "some stuff" in the trunk of the car. Four dozen eggs and a black hose were put into the front of the car. The party then went to the defendant's trailer where the items were carried into the trailer by the men.

The State's witness, Nancy Ann Taylor, testified that she observed that evening in the defendant's trailer two hatchets, the eggs and four packs of cookies, all of which were allegedly taken from the Vargo residence. She said she saw the following morning two additional items, a white pillowcase and a can of aftershave lotion.

The owner of the farm, Mr. Vargo, testified that the following day he went to the farmhouse and discovered the door on the right side of the house had been forced open.[4] He stated that upon an inventory some items of personal property had been taken although there was some confusion at trial as to the identity of these items in regard to the one which were listed in the indictment. However, as we have noted in the earlier portion of this opinion, it is not necessary for the State to prove a

---

[4] The Vargos apparently did not occupy the farmhouse on a full-time basis. The general rule is that a dwelling house does not lose its character as a dwelling because its owners only occupy it on a part-time basis. *State v. Bair*, 112 W. Va. 655, 166 S.E. 369, 85 A.L.R. 424 (1932). *See also, Reeves v. State*, 245 Ala. 237, 16 So.2d 699 (1943); *Smith v. State*, 80 Fla. 315, 85 So. 911 (1920); *Montgomery v. State*, 128 Ga. App. 116, 195 S.E.2d 784 (1973). 3A Michie's Jurisprudence, *Burglary and Housebreaking* §4 (1976); 12A C.J.S. *Burglary* §29 (1980). W. Va. Code, 61-3-11(c), states a "dwelling house" may be "used as a dwelling regularly or only from time to time."

completed larceny in order to obtain a conviction for burglary but only that there was an intent to commit a larceny. Here, the defendant's actions at the time of the occurrence and the removal of some property from the farmhouse were sufficient to show an intent to commit a larceny.

While the case is based to some degree on circumstantial evidence in regard to the breaking and entering, it is clear that the defendant along with the other individuals were placed on the Vargo property. Prior to entry on the property, the defendant discussed with the others that the Vargos were not in the house. Moreover, the defendant was seen going toward the farmhouse and returning with certain items that he placed in the trunk of the car. There was the further evidence by Mr. Vargo that the following day upon visiting the farmhouse he saw evidence of a forced entry and some items of personal property were taken from the house.

We have discussed the question of the sufficiency of the evidence in the related crime of breaking and entering[5] in *State v. Craft*, 165 W. Va. 741, 272 S.E.2d 46 (1980). There, we concluded that there was sufficient evidence to support the conviction where the defendant was observed near the building which had been unlawfully entered and had in his possession items that had been taken from the building. *See also, State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974); *State v. Hankish*, 147 W. Va. 123, 126

[5] The primary difference between burglary and breaking and entering is that the former involves the breaking and entering or entering without breaking of a dwelling house or outbuilding adjoining thereto at nighttime or breaking and entering of a dwelling house or outbuilding adjoining thereto during the daytime. W. Va. Code, 61-3-11(a). If there is an entering without breaking of a dwelling during the daytime, W. Va. Code, 61-3-11(b), or the breaking and entering or entering without breaking of certain structures enumerated in W. Va. Code, 61-3-12, the offense is a felony with a penalty of one to ten years. These latter offenses are commonly called "breaking and entering" or "entering without breaking." In all the offenses, the entry must be with the intent to commit a felony or any larceny.

S.E.2d 42 (1962); *State v. Gregory*, 143 W. Va. 878, 105 S.E.2d 532 (1958).

For the foregoing reasons, we conclude there was no error committed and, therefore, the judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*