294 S.E.2d 248

**STATE of West Virginia**

v.

**Michael HORTON.**

No. 15157.

Supreme Court of Appeals of
West Virginia.

July 12, 1982.

James A. Matish, Clarksburg, for appellant.

Chauncey H. Browning, Atty. Gen., and Laurie J. Garrigan, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal by Michael Horton from a final order of the Circuit Court of Marion County sentencing him to from one to fifteen years in the state penitentiary for breaking and entering. On appeal the appellant asserts that the evidence adduced during his trial was not sufficient to support a verdict of guilty and that the trial court erred in not directing a verdict for him. He also contends that the trial court erred in compelling him to testify generally when he took the stand to testify only about a collateral issue and that the court erred in refusing to give an instruction which would have allowed the jury to find him guilty of the misdemeanor offense of entry upon inclosed lands. We find that the appellant's contentions are without merit, and we affirm the judgment of the Circuit Court of Marion County.

The appellant was charged with breaking and entering the home of Mr. and Mrs. Albert Borda on February 25, 1977. During the appellant's trial the following facts surrounding the crime were developed. Mrs. Borda testified that approximately 11:30 a.m. on February 25, 1977, she left her home to see a doctor. Her husband was at work, and the house was empty. When she returned at around 1:00 p.m. she discovered that one of her basement windows had been broken. She entered the basement and found glass on the floor. She also found a piece of wood which had apparently been thrown through the base-ment window. Directly inside the window was a toaster oven which had been tilted over. There were fingerprints on the oven pointing toward the center of the room. Mrs. Borda called the police.

In checking her house Mrs. Borda determined that a gun usually kept in her husband's underwear drawer was missing. Later during house cleaning Mrs. Borda verified that the gun was missing.

The police in investigating the incident made three fingerprint lift cards from the prints on the toaster oven located inside the basement window. They also determined the appellant had walked past the Borda house on several occasions. Mrs. Borda indicated that she had spoken to the appellant, but that he had never entered her house. The police checked their files for the appellant's fingerprints, but they could not find them on record.

Later in 1977 the appellant was arrested for another crime, the theft of a stereo system. Upon his arrest he was fingerprinted. After taking the prints the police sent them, with the latent prints from the Borda house, to the Criminal Investigation Bureau for comparison. The Latent Print Examiner at the Criminal Investigation Bureau concluded that the prints from the toaster oven in the Borda home matched the appellant's prints in numerous ways. Thereupon the appellant was arrested and charged with breaking and entering the Borda home.

On appeal the appellant's first assertion is that the trial court erred in refusing to direct a verdict of not guilty at the conclusion of the State's case-in-chief. He argues that the evidence was insufficient to support a verdict of guilty of breaking and entering.

■ Our rule on assessing the correctness of a trial court's ruling on a motion for a directed verdict is set out in syllabus point 1 of *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974):

"'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prose-

cution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W.Va. 325 [168 S.E.2d 716] (1969)."

■ This case is rather analogous to *State v. Bair*, 112 W.Va. 655, 166 S.E. 369 (1932), where a house was also burglarized. The burglar presumably gained entry through a broken window. In the soil beneath the window three sets of footprints were found. One of the sets of footprints was remarkable in that it included prints made by a shoe without a heel. Another of the sets was characterized by distinctive heel marks. Three days after the burglary a deputy sheriff who lived in the vicinity of the house burglarized saw two persons, including the defendant Bair, pass in front of his house. He examined their tracks and discovered that they matched those found at the burglarized house. This Court concluded that the shoe print evidence together with evidence that the defendant was in the neighborhood on the night of the burglary was sufficient to connect the defendant with the crime and to support a conviction.

In the present case we believe that fingerprints are sufficiently unique and sufficiently like the unique heel prints involved in *Bair* to tie the appellant to the site of the crime. Nonetheless, the appellant argues that because of our holding in *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), the fingerprint evidence will not support his conviction. In syllabus point 1 of *Noe* we said:

"Fingerprint evidence, being circumstantial evidence, will not sustain a conviction in a criminal case when such evidence, as presented, is the only evidence linking defendant to the commission of the crime, creates a mere suspicion of guilt, does not prove the actual commission of the crime charged and fails to prove guilt to the exclusion of every reasonable hypothesis of innocence."

In *Noe* there was evidence that the defendant had visited with the decedent's husband in the decedent's apartment on several occasions. In view of this evidence, it was perfectly logical to conclude that Noe had left his fingerprints in the apartment during some purely innocent visit with the decedent's husband. The evidence did not thus exclude every reasonable hypothesis but guilt, but did, in fact, support a reasonable hypothesis consistent with Noe's innocence. Thus, we arrived at our conclusion. The critical factor in that conclusion was the fact that there was evidence that Noe had been in the apartment on purely innocent occasions.

In the case before us there was no evidence that the appellant had ever legitimately been in the Borda house. Because there was no evidence that the appellant had ever legitimately been in the Borda house, we reject his argument based on *Noe* that the fingerprint evidence will not support his conviction.

After construing the evidence that Mrs. Borda found her husband's pistol missing, that her basement window was broken, that the appellant's fingerprints were found in the basement, and that the appellant had been seen in the neighborhood and had never legitimately been in the house, in the light most favorable to the prosecution, as we are required to do by syllabus point 1 of *State v. Fischer, supra*, we conclude that there was circumstantial evidence upon which the jury might have justifiably found the appellant was guilty beyond a reasonable doubt.

■ During the course of his trial the appellant took the position that the latent prints sent by the police to the Criminal Investigation Bureau were not the latent prints actually removed from the toaster oven located in the Borda house. To support this position the defense pointed out that the police waited 7 months to send the latent prints to the Criminal Investigation Bureau, that there had been a history of animosity between the Fairmont City Police and the appellant's family, and that the

appellant had been considered a suspect from the outset. The explanation given by the State for the delay in transmitting the prints was that the city police had no "known" prints from the appellant on file until August, 1977. The appellant was of the view that the city police did have "known" prints on file before August, 1977.

To establish that the city police had his prints on file before August, 1977, the appellant took the stand and testified in his own behalf. His testimony involved his prior arrests and fingerprintings. When he took the stand he moved to limit the State's cross-examination of him to the matters about which he wished to testify. The court refused to limit cross-examination and allowed the prosecution to cross-examine him generally.

On appeal the appellant argues that in allowing the State to cross-examine him the court, in effect, compelled him to waive his fifth amendment privilege against self-incrimination.

The final question asked the appellant on direct examination was: "Michael, did you break into the Borda home?" He responded: "No sir, I did not." We believe that at this point the appellant's testimony went beyond the limited examination for which he purportedly took the stand. Consequently, there is no factual basis for this assignment of error and we decline to address it further.

At the conclusion of the evidence the appellant requested that the court give Defendant's Instruction No. 22 which said:

"The Court instructs the jury that if they believe beyond a reasonable doubt that the defendant Michael Horton did enter upon the inclosed lands of Mr. and Mrs. Borda, without their consent, and did any damage, the jury may find the defendant guilty of entry of inclosed lands, a misdemeanor."

This instruction would have allowed the jury to find the appellant guilty of the offense described in *W.Va. Code*, 61–3–33 [1923]. The court refused to give the instruction. The appellant argues that entry upon closed lands is a lesser included offense in the crime breaking and entering and that the trial court was obligated to give an instruction, when proffered, on such a lesser included offense.

■ In syllabus point 1 of *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981), we said:

"The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense."

■ *W.Va.Code*, 61–3–33 (1923), which establishes the crime of entry upon inclosed lands, provides, in relevant part:

"If any person shall without the consent of the owner or occupier thereof, enter upon the inclosed lands of another and do any damage or shall, without such consent, pull down in whole or in part, or injure, any fence of another, or without permission open and leave open the gate or drawbar of another, or enter upon the inclosed lands of another after being forbidden so to do, or enter thereon and curse, or insult, or annoy, the owner thereof or any person rightfully there, he shall be guilty of a misdemeanor, and, upon conviction, be fined not less than five nor more than one hundred dollars; . . ."

Under this statute for one to commit the crime of entry upon inclosed lands, it is necessary that he enter upon lands which are actually inclosed and additionally that he damage the lands or commit some other of the acts specified. We believe that one may commit the crime of breaking and entering by breaking and entering a structure upon lands which are not inclosed and by breaking and entering without doing damage or committing any of the other acts specified in *W.Va.Code*, 61–3–33 [1923]. In short, we believe that one may commit breaking and entering without committing unauthorized entry upon inclosed lands. Therefore, under the test set forth in syllabus point 1 of *State v. Louk, supra,*

unauthorized entry upon inclosed lands is not a lesser included offense in the crime of breaking and entering, and the trial court did not err in refusing to give Defendant's Instruction No. 22.

For the reasons stated the judgment of the Circuit Court of Marion County is affirmed.

Affirmed.