IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-603

_____

**FILED**

**May 18, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

V.

AUSTIN STEVENS,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Criminal Action No. 22-F-93

AFFIRMED

_____

Submitted: March 4, 2026
Filed: May 18, 2026

Gary A. Collias, Esq.
Appellate Advocacy Division
Public Defender Services
Charleston, West Virginia
Attorney for the Petitioner

John B. McCuskey, Esq.
Attorney General
Caleb A. Seckman, Esq.
Assistant Solicitor General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Respondent

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

2.      "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense." Syllabus Point 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

3.      "'The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982).' Syl. Pt. 1, *State*

i

*v. Jones*, 174 W. Va. 700, 329 S.E.2d 65 (1985)." Syllabus Point 3, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013).

4.      "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994).

5.      "Before a lesser offense can be said to contribute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense." Syllabus Point 5, *State v. Vance*, 168 W. Va. 666, 285 S.E.2d 437 (1981).

**BUNN, Chief Justice:**

Petitioner Austin Stevens appeals the Circuit Court of Cabell County's September 20, 2023 sentencing order following his conviction for a single count of unlawfully, feloniously, and intentionally torturing, mutilating, or maliciously killing an animal, in violation of West Virginia Code § 61-8-19(b). On appeal, Mr. Stevens raises a single assignment of error: that the circuit court erred by finding that misdemeanor animal cruelty is not a lesser included offense of the felony provision in the same statute and, in turn, denying his motion for a jury instruction on the lesser offense. We conclude that the circuit court committed no error and affirm Mr. Stevens's conviction.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Vickie and Rusty Scarberry owned and raised cattle in Cabell County, West Virginia. On December 4, 2021, a neighbor noticed that one of the Scarberrys' calves was wounded[1] and notified Mrs. Scarberry. Mrs. Scarberry saw that the calf had been shot by two arrows, with one protruding from the calf's side and another from its head; the calf was having difficulty breathing; and blood was streaming down its face. Mrs. Scarberry first called 9-1-1, then she called her husband. Upon arriving home, Mr. Scarberry observed

---

[1] Mr. Scarberry testified at trial that the calf was "just about two months and a week" old and weighed about 175 pounds.

that the calf was "foaming out the nose[.]" Based upon his knowledge as a cattle owner, he believed that an arrow had punctured the calf's lung and that there was no way to save the calf's life. He then followed the trail of blood from the calf's wounds to Mr. Stevens's home.[2] Mr. Scarberry confronted Mr. Stevens, but Mr. Stevens denied shooting the calf.

Among other officers, Animal Control Officer[3] Jon Rutherford arrived at the scene of the incident. When Officer Rutherford saw the calf, "it still had the arrow sticking out of its chest to where it was ticking to each heartbeat, which is a sign that it was shot directly into the heart." The calf stood near its mother, not moving and struggling to breathe. Officer Rutherford first spoke with Mr. Scarberry. Mr. Scarberry indicated he was unable to "put the animal down" because it was "a baby," but he consented to Officer Rutherford euthanizing the calf.[4]

---

[2] Aside from being neighbors, Mr. and Mrs. Scarberry also testified that Mr. Stevens previously worked for Mr. Scarberry for a few months that same year and the working relationship did not end well. Furthermore, Mrs. Scarberry was related to Mr. Stevens through his grandmother.

[3] At the time Officer Rutherford testified at Mr. Stevens's trial, he had left his employment with Huntington Cabell Wayne Animal Control and was employed by the Cabell County Sheriff's Department.

[4] Officer Rutherford stated during the trial that it was unnecessary for him to consult with a veterinarian regarding the decision to euthanize the calf because he was a licensed euthanasia technician through the State of West Virginia, "which gave [him] the right to make the decision on if an animal is able to survive or needs to be euthanized."

Officer Rutherford also followed the trail of blood from the calf's wounds to Mr. Stevens's residence. He spoke with Mr. Stevens, who admitted to shooting the calf. In his initial statement, Mr. Stevens provided various reasons for shooting the calf: (1) he was tired of the calf coming onto his property and defecating, (2) he did not like Mr. Scarberry, and (3) he was fearful for his life because the calf was on his property.[5]

In a subsequent written statement to law enforcement, Mr. Stevens asserted that upon arriving home from work he saw a cow grazing in his front yard; however, he thought nothing of this and went inside his home. Mr. Stevens let his dog out into the yard, and his dog started barking at the cow. When he called his dog back inside, it ran back out again. Mr. Stevens tried to drive away the cow, but it did not leave. He then went back to his home to retrieve his compound bow "out of instinct."[6] Mr. Stevens later provided a recorded statement recounting the same information. In addition, however, he stated that once the cow refused to move, he became worried, and he decided to "put the animal down." Mr. Stevens then decided to retrieve his compound bow and shot the animal in the torso and the forehead from about thirty yards away. The cow proceeded to "trot off," and

---

[5] At trial, Mr. Stevens denied that he told Officer Rutherford that he shot the calf because he was angry it was on his property again and that he did not like Mr. Scarberry.

[6] Mr. Stevens had indicated to Officer Rutherford that he hunted with this bow and won awards at shooting competitions. Additionally, the arrowheads Mr. Stevens used were "Rage broadhead" arrowheads that flip open on impact "to create a large wound channel to cause maximum impact."

Mr. Stevens went back inside his home feeling "scared." Mr. Stevens said he was in his car leaving his home with his girlfriend when Mr. Scarberry confronted him about shooting the calf.

A Cabell County grand jury indicted Mr. Stevens in April 2022 on one count of felony cruelty to animals for "unlawfully, feloniously and intentionally torturing, mutilating or maliciously killing an animal[.]" *See* W. Va. Code § 61-8-19(b). Subsequently, on May 30, 2023, Mr. Stevens's jury trial began. The State presented testimony from the Scarberrys and Officer Rutherford. Mr. Stevens and his grandmother testified in Mr. Stevens's defense.

Following the close of evidence, Mr. Stevens requested a jury instruction for misdemeanor cruelty to animals arguing that the jury could decide that his conduct was not "malicious, or intentionally torturing this animal, but they maybe thought he was . . . inflict[ing] cruelty upon it under the misdemeanor statute." The circuit court denied the request, finding that the animal cruelty misdemeanor is not a lesser included offense of the animal cruelty felony. Ultimately, the jury convicted Mr. Stevens of felony cruelty to animals. Mr. Stevens moved for a new trial based in part on the court's denial of his request for a jury instruction on the misdemeanor he contended was a lesser included offense. The circuit court denied the motion and sentenced Mr. Stevens to not less than one nor more than five years of imprisonment, suspended for four years of probation, with the

4

first year to be served on home incarceration. The court also ordered Mr. Stevens to pay $1,500 in restitution.

## II.

## STANDARD OF REVIEW

Mr. Stevens contends that the circuit court erred by refusing to instruct the jury on the offense of misdemeanor animal cruelty. This Court has consistently held that, "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). Furthermore, we have held that:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

## III.

## DISCUSSION

Mr. Stevens's sole assignment of error on appeal is that the circuit court failed to instruct the jury that it could find Mr. Stevens guilty of misdemeanor animal

5

cruelty as a lesser included offense of the felony provision under the same statute. Specifically, Mr. Stevens argues that the misdemeanor animal cruelty offense of intentionally, knowingly, or recklessly "mistreat[ing] an animal in a cruel manner is a lesser included offense of the felony offense of maliciously kill[ing] an animal[.]" (alterations in original). He further contends that he presented evidence at trial that would support giving the instruction on the lesser included offense. We disagree and conclude that the misdemeanor animal cruelty offense of intentionally, knowingly, or recklessly mistreating an animal in a cruel manner is not a lesser included offense of the felony offense of maliciously killing an animal.

This Court applies a two-part test to determine whether a defendant is entitled to a jury instruction regarding a potential lesser included offense:

> "The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)." Syl. Pt. 1, *State v. Jones*, 174 W. Va. 700, 329 S.E.2d 65 (1985).

Syl. Pt. 3, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013). If the first inquiry is not satisfied, however, a court need not consider the second inquiry. *See State v. Thomas*, 249 W. Va. 181, 189, 895 S.E.2d 36, 44 (2023) ("Therefore, the crime of attempted sexual

6

assault in the first degree is not a lesser included offense of sexual assault in the first degree and Petitioner was not entitled to the instruction because the first prong of *Neider* is not met."); *see also Wilkerson*, 230 W. Va. at 372, 738 S.E.2d at 38 (declining to proceed to the second inquiry after concluding that the first inquiry was not satisfied).

In applying the first part of the *Neider* test, a court must determine whether an offense is a lesser included by examining the elements of each offense:

> The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

Syl. Pt. 1, *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994). In other words,

> [b]efore a lesser offense can be said to contribute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense.

Syl. Pt. 5, *State v. Vance*, 168 W. Va. 666, 285 S.E.2d 437 (1981).

Accordingly, we must compare the elements of the two crimes at issue and consider whether the offense of misdemeanor animal cruelty contains an element not

7

required of the felony provision. *See* Syl. Pt. 1, *Louk*, 169 W. Va. 24, 285 S.E.2d 432. Generally, we have strictly followed this elements test. *See Wilkerson*, 230 W. Va. at 370-71, 738 S.E.2d at 36-37 ("This Court has always applied the strict elements test as set forth in syllabus point one of *Louk* to determine whether a lesser included instruction is warranted."); *see also State v. Henning*, 238 W. Va. 193, 196, 793 S.E.2d 843, 846 (2016) ("[H]istorically, this Court has applied the strict elements test to determine whether a lesser included offense instruction is warranted in a particular case." (quotations and citation omitted)).[7]

In comparing the elements of the two statutes at issue, the strict elements test is not satisfied. West Virginia Code § 61-8-19(a)(1), the misdemeanor animal cruelty statute, provides in relevant part, that "[i]t is unlawful for any person to intentionally, knowingly or recklessly, (A) Mistreat an animal in cruel manner[.]"[8] Therefore, in order to

---

[7] *See also State v. Wade*, 200 W. Va. 637, 646, 490 S.E.2d 724, 733 (1997) (concluding that second-degree murder and voluntary manslaughter are not lesser included offenses of felony murder because "each require an element that is not necessary for a conviction of felony-murder); *State v. Bradford*, 199 W. Va. 338, 347, 484 S.E.2d 221, 230 (1997) (applying *Louk* and stating that the offense of accessory after the fact cannot be lesser included offense of murder because "[t]o be an accessory after the fact one must prove [the accused] was not present when crime was committed and also must prove that [the accused] assisted the principle perpetrator" in certain acts which are not elements of murder); *State v. Horton*, 170 W. Va. 395, 398, 294 S.E.2d 248, 251-52 (1982) (per curiam) (concluding that under *Louk*, "one may commit breaking and entering without committing unauthorized entry upon [e]nclosed lands.").

[8] An individual can commit misdemeanor animal cruelty in a variety of ways. *See* West Virginia Code § 61-8-19(a)(1) (enumerating multiple methods for committing

commit animal cruelty, under this specific subpart, an individual must (1) intentionally, knowingly or recklessly (2) mistreat an animal (3) in a cruel manner. In contrast, the felony provision provides that,

> (b) A person who intentionally tortures, or mutilates or maliciously kills an animal, or causes, procures or authorizes any other person to torture, mutilate or maliciously kill an animal, is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility not less than one nor more than five years and be fined not less than one thousand dollars nor more than five thousand dollars. For the purposes of this subsection, "torture" means an action taken for the primary purpose of inflicting pain.

Relevant to this matter, an individual commits felony animal cruelty when the individual (1) maliciously (2) kills an animal.[9]

Mr. Stevens argues that one cannot maliciously kill an animal without first mistreating the animal in a cruel manner. We disagree. The Court has "recognized that 'malice' is not easy to define." *State v. Burgess*, 205 W. Va. 87, 89, 516 S.E.2d 491, 493 (1999). Rather, it is a term that can be "described in various ways." *State v. Bongalis*, 180

---

misdemeanor animal cruelty, including but not limited to "intentionally, knowingly or recklessly" mistreating an animal in a cruel manner, abandoning an animal, and withholding proper sustenance).

[9] While the felony provision of the statute provides several ways to commit felony animal cruelty, Mr. Stevens solely argues that mistreating an animal in a cruel manner is a lesser included offense of maliciously killing an animal. Thus, we limit our analysis to these provisions.

W. Va. 584, 587, 378 S.E.2d 449, 452 (1989). As one example, this Court approved the

following instruction regarding malice:

> The word malice, as used in these instructions, is used in a technical sense. It may be either express or implied and it includes not only anger, hatred and revenge, but other unjustifiable motives. . . . Malice is not confined to ill-will toward any one or more particular persons, but malice is every evil design in general; and by it is meant that the fact has been attended by such circumstances as are ordinarily symptoms of a wicked, depraved and malignant spirit, and carry with them the plain indications of a heart, regardless of social duty, and fatally bent upon mischief. . . .[10]

*Id.* at 588 n.1, 378 S.E.2d at 453 n.1 (quotations omitted).[11] On the other hand, while our

statute does not define the term "cruel manner," other states have defined treating animals

in a "cruel manner" as requiring unnecessary pain to the animal. *See, e.g.*, *Houk v. State*,

---

[10] The circuit court in the present matter gave the jury an identical instruction regarding the definition of malice.

[11] This Court has also described "malice" as "'[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . . A condition of the mind showing a heart regardless of social duty and fatally bent on mischief.'" *State v. Burgess*, 205 W. Va. 87, 89, 516 S.E.2d 491, 493 (1999) (alterations in original) (citing Black's Law Dictionary 956 (6th ed. 1990)). *See also id.* at 89, 516 S.E.2d at 493 ("'Malicious' means '[c]haracterized by, or involving, malice; having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will.'" (alterations in original) (citing Black's Law Dictionary 958 (6th ed. 1990))); *State v. Douglass*, 28 W. Va. 297, 299 (1886) ("[T]he source of . . . malice is not only confined to a particular ill will to the deceased, but is intended to denote . . . an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief. And therefore malice is implied from any deliberate cruel act[.]").

10

316 So. 3d 788, 794 (Fla. Dist. Ct. App. 2021) (explaining that "acts of carrying [an animal] in *a cruel manner* naturally result in unnecessary pain or suffering to that animal" (emphasis added)).[12]

Based upon these definitions, an individual could maliciously kill an animal without first mistreating an animal in a *cruel manner*. Put another way, acts that may be malicious or cruel *in general* (i.e. killing an animal out of malice) is not the same as cruelty *in the execution or by the means* of an act (i.e. in a cruel manner). For example, one may kill an animal with malicious intent toward the owner of the animal or the animal itself, but accomplish the killing in an otherwise humane way. *Cf.*, Syl., in part, *Burgess*, 205 W. Va. 87, 90, 516 S.E.2d 491 (concluding that when one "unlawfully dispatches a domestic animal belonging to another person by using a commonly accepted, humane method, *and there is no evidence of any other form of malice*, the killing is not malicious" (emphasis added)). Because it is possible to commit the greater offense, maliciously killing an animal, without also committing the lesser offense, mistreating an animal in a cruel manner, the strict elements test is not satisfied.

---

[12] *See also* Tex. Penal Code § 42.092(a)(3) (defining "cruel manner" in the animal cruelty to non-livestock animals statute as "a manner that causes or permits unjustified or unwarranted pain or suffering."); Ariz. Rev. Stat. Ann. § 13-2910 (providing that "'[c]ruel mistreatment' means to torture or otherwise inflict unnecessary serious physical injury on an animal or to kill an animal in a manner that causes protracted suffering to the animal.").

While Mr. Stevens "recognizes that the literal wording of subsection (b) does not contain all the elements of subsection (a)(1)(A), plus one or more additional elements, making it immediately obvious that one is the lesser included offense[,]" he instead argues that we should find that the Legislature intended the misdemeanor offense of animal cruelty, here cruel mistreatment, to be a lesser included offense of the felony offense, here maliciously killing an animal, based on the structure of the statute. We disagree.

As we stated above, this Court, with rare exception, has strictly applied the elements test when determining whether a lesser offense was a lesser included offense. However, we acknowledge that in a few unique circumstances, we have varied from that general rule. In *Henning*, the Court considered whether assault was a lesser included offense of malicious assault. 238 W. Va. at 195, 793 S.E.2d at 845. The petitioner asserted that assault could not be a lesser included offense of malicious assault because of the absence of an element from the statutory definition of malicious assault. *Id*. at 197, 793 S.E.2d at 847. Nevertheless, the Court acknowledged the Legislative intent in "this rare and unique circumstance" and found that "[a]s West Virginia Code § 61-2-9 is written, it is clear that the [L]egislature intended the lesser degrees of assault to be lesser included offenses." *Id.* at 199, 793 S.E.2d at 849. The *Henning* Court explained that it had "long held that assault and battery are lesser included offenses of malicious assault." *Id*. at 197, 793 S.E.2d at 847. In fact, prior to the codification of the offenses of assault and battery, the Court had held that "[a] conviction for assault and battery will be sustained under an

12

indictment for violating the provisions of Code 61-2-9 [defining malicious assault and unlawful assault], because of the provisions of Code, 62-3-14.[13]" *Id*. at 197-98, 793 S.E.2d at 847-48 (first alteration added) (quoting Syl. Pt. 1, *State v. Craft*, 131 W. Va. 195, 47 S.E.2d 681 (1948)). The Court reiterated that

> "Notwithstanding that the crime of assault and battery is not expressly included in the provisions of Code, 61-2-9, providing for the crimes of malicious [assault] and unlawful [assault], the penalties therefor, and that such crimes shall constitute felonies, a conviction for assault and battery, under the provisions of Code, 62-3-14, may be had in a prosecution for the crime of malicious or unlawful [assault] provided for in Code, 61-2-9." Syl. Pt. 3, *State v. King*, 140 W.Va. 362, 84 S.E.2d 313 (1954).

*Henning*, 238 W. Va. at 198, 793 S.E.2d at 848 (alterations in original). Ultimately, the *Henning* Court found that "by placing the offenses of assault and battery within the framework of West Virginia Code § 61-2-9, it [wa]s clear that the legislature intended to import the common law pertaining to the offenses of assault and battery into the statute." *Id*. at 200, 793 S.E.2d at 850.[14]

---

[13] West Virginia Code § 62-3-14 provides:

> If a person indicted for a felony be by the jury acquitted of part and convicted of part of the offense charged, he shall be sentenced by the court for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor.

[14] Furthermore, aside from the Legislature's intent to keep with the common law, the Court also explained that the assault statute provides two ways that a person can commit the offense and that "[w]hen the strict elements test is applied to the various forms of assault set forth in the statute, only assault committed by placing another in reasonable

13

The Court further explained that "[o]ther jurisdictions . . . have chosen to expand the definition of lesser included offense." *Id.* at 199, 793 S.E.2d at 849. However, this Court has explicitly declined to modify our strict elements test, finding it was "unnecessary . . . because this Court long ago determined under the common law that a misdemeanor assault conviction is sustainable under an indictment for malicious assault." *Id.* at 200, 793 S.E.2d at 850.

Here, unlike the Court in *Henning*, we are not facing "rare and unique circumstances" regarding the juxtaposition of statutorily defined crimes and substantial common law. Prior to the codification of the animal cruelty statute, this Court never held that mistreating an animal in a cruel manner is a lesser included offense of the malicious killing of an animal. Other than in those rare circumstances where there is a substantial body of common law supporting a different conclusion, this Court has always strictly adhered to the elements test.[15] Based upon the circumstances of this case, we decline to

---

apprehension of suffering physical pain or injury contains an element not required for the greater offenses" and that the second way was "unquestionably a lesser included offense." *Henning*, 238 W. Va. at 198, 793 S.E.2d at 848. Accordingly, we concluded that we could not "read a statute in such a manner so as to create an absurdity." *Id.* Here, the misdemeanor animal cruelty statute provides for numerous ways to commit misdemeanor animal cruelty, including some which, applying the strict elements test, would plainly be excluded as a lesser included offense of the felony provision (*e.g.* intentionally, knowingly, or recklessly abandoning an animal). *See generally* W. Va. Code § 61-8-19(a)(1).

[15] We further recognize that in *State v. Bland*, we applied *Henning* and concluded that like the offenses discussed in *Henning*, "the placement of the statutory offenses of domestic assault and domestic battery within West Virginia Code § 61-2-28 evidences

14

expand our strict elements test.[16] Consequently, we find that the misdemeanor animal cruelty offense set forth in West Virginia Code § 61-8-19(a)(1)(A) is not a lesser included offense of the felony offense of maliciously killing an animal as set forth in West Virginia Code § 61-8-19(b). Because we find that the misdemeanor animal cruelty offense of mistreating an animal in a cruel manner is not a lesser included offense of the felony provision, it is not necessary to proceed to the second inquiry regarding whether there was evidence which would have tended to prove mistreatment of an animal in a cruel manner. We, therefore, conclude that the circuit court did not err in refusing to give Mr. Stevens's requested instruction for misdemeanor animal cruelty.

---

legislative intent to set forth differing degrees of punishment depending upon the severity of the form of the crime committed." 239 W. Va. 463, 469, 801 S.E.2d 478, 484 (2017). This application of *Henning* to *Bland*—both of which concern different types of assault and battery offenses—does not alter our decision to decline to expand the strict elements test because as we explained, "[b]ut for the domestic violence application," the offenses were "virtually identical" to those discussed in *Henning* and the same common law reasoning applied. *Id.*

[16] In addition to *Henning*, which we have distinguished, Mr. Stevens cited several cases he argued support his position. However, we find his reliance on those cases misplaced because the cases Mr. Stevens cites involve construing and interpreting statutes in different circumstances. *See, e.g.*, *State v. Maichle*, 249 W. Va. 326, 331-32, 895 S.E.2d 181, 186-87 (2023) (utilizing legislative intent when assessing the sufficiency of the indictment's language); *State v. White*, 188 W. Va. 534, 536, 425 S.E.2d 210, 212 (1992) (interpreting "the legislative time limitation regarding incarceration as a condition of probation"); *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 115-16, 219 S.E.2d 361, 365-66 (1975) (relying on legislative intent when interpreting an ambiguous statute).

15

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the September 20, 2023 sentencing order of the Circuit Court of Cabell County is affirmed.

Affirmed.